UNITED STATES of America,
Plaintiff–Appellee,

v.

James Thomas CROWDER,
Defendant–Appellant.

No. 94–5936.

United States Court of Appeals,
Sixth Circuit.

Argued April 4, 1995.

Decided Aug. 8, 1995.

Richard Leigh Grinalds, Asst. U.S. Atty. (argued and briefed), Jackson, TN, for plaintiff-appellee.

G. William Hymers, III (argued and briefed), Jackson, TN, for defendant-appellant.

Before: BOGGS and BATCHELDER, Circuit Judges; ALDRICH, District Judge.*

BATCHELDER, Circuit Judge.

The defendant in this case appeals his conviction for violation of 18 U.S.C. § 922(g) and 26 U.S.C. §§ 5841, 5861(d), and 5871. The issue on appeal is the admissibility of evidence obtained as a result of a consent to search given by a defendant before hearing Miranda warnings.

## I.

James Crowder, the defendant, was charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) and with possession of a shotgun with a barrel length of less than eighteen inches in violation of 26 U.S.C. § 5841, 5861(d), and 5871. The defendant filed motions to suppress a

* The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

sawed-off shotgun seized by the officers, oral statements he made to the officers when he was arrested, and a written statement he gave while in custody. The district court overruled these motions and the defendant entered a conditional guilty plea to both counts.

On October 29, 1993, Police Officers Sylvester and Davis and Chief of Police Cannon investigated an incident in which the defendant had allegedly fired a gun over his neighbor's head. At the suppression hearing, the district court found that the police confronted the defendant in front of his home and obtained his permission to search the house. Once inside the house, the officers arrested and handcuffed the defendant and searched the house for the gun, but did not find it.

The defendant then told the police that the gun was at the home of his girlfriend's mother, so the officers placed him in the back of Officer Davis's squad car and took him to that residence. After a consensual search of that home yielded no weapon, the police placed the girlfriend in the back of another squad car, although they did not arrest her. The defendant (who was still handcuffed) then "pecked" at the squad car window to get Chief Cannon's attention and told him, "I will tell you where the gun's at." The defendant stated that the weapon was located "in the wood." Apparently, by "in the wood," the defendant meant that the gun was in the attic of his home. Officer Davis was confused by the phrase "in the wood" and as they were returning to the defendant's house, he asked the defendant questions about the location of the gun. The defendant gave permission to enter his house for a second search and led the police to a sawed-off shotgun. At no time during this series of events did the officers advise the defendant of his Miranda rights.

Ten days later, on November 8, 1993, Criminal Investigator Derr advised the defendant of his Miranda rights and had him sign a full consent to waive those rights. During the ensuing interview, the defendant gave a four-page statement. It is undisputed that this was the first time that Miranda warnings were given to the defendant in connection with these offenses.

**II.**

In this appeal, the defendant claims that the shotgun and all of his statements were inadmissible because (1) the defendant's consent to search his residence was the product of coercion by the police; (2) the evidence obtained in the search would not have been inevitably discovered absent his consent to search; (3) all of the defendant's oral statements should have been suppressed due to the lack of Miranda warnings; and (4) the defendant's confession resulted from coercion and should have been suppressed. The defendant does not challenge his arrest or the district court's finding that the police officers had probable cause to arrest him. For the following reasons, we hold that the district court did not err in denying the motions to suppress the statements and the shotgun.

■ On suppression issues, we review the district court's findings of fact for clear error, but we review all conclusions of law *de novo*. *United States v. Bencs,* 28 F.3d 555, 558–59 (6th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 915, 130 L.Ed.2d 796 (1995).

**A.**

■ The defendant argues that "any oral statements given to the officers after [the defendant] was in custody should have been suppressed." The district court found that the defendant was not subject to custodial interrogation when he "pecked" at the window and stated "I will tell you where the gun's at," but that he was subject to custodial interrogation when he subsequently answered any questions, such as Officer Davis's attempts to clarify what the defendant meant by "in the wood."

■ We agree. While the defendant was in custody upon his arrest, Miranda warnings were required only when the defendant was in custody *and* was subject to interrogation, which is defined as "express questioning or its functional equivalent." *Rhode Island v. Innis,* 446 U.S. 291, 300–01, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980) ("[T]he special procedural safeguards outlined in *Miranda* are required not where a

suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation."); *United States v. Montano*, 613 F.2d 147, 149 (6th Cir.1980). In this case, the defendant's initiation of contact with Chief Cannon and offer to tell him the location of the gun were not the result of either express questioning or its functional equivalent. His statements relating to the second consent to search his home, and that consent itself, however, were statements made when the defendant was in custody and subject to interrogation.

## B.

■ It is undisputed that the defendant's second consent to search his home and his statements relating to that consent were made prior to his receiving Miranda warnings. The admissibility of the shotgun and the subsequent written confession, therefore, depends on whether the defendant's consent and statements which led to the seizure of the shotgun were voluntary.

■ In *Oregon v. Elstad*, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), the Supreme Court emphasized that the Miranda exclusionary rule "differs in significant respects" from the Fourth Amendment exclusionary rule. *Id.* at 306, 105 S.Ct. at 1291. A Fourth Amendment violation taints a subsequent confession, for example, unless the prosecution can demonstrate not only that the confession was voluntary, but also that a sufficient break in the events occurred "to undermine the inference that the confession was caused by the Fourth Amendment violation." *Id.* By comparison, unwarned statements made during a custodial interrogation are not admissible, regardless of whether the statements were voluntary or whether a constitutional violation occurred. *Id.* at 307, 105

S.Ct. at 1292. This automatic exclusion, however, does not extend to evidence obtained as a result of the unwarned statement, because the failure to deliver Miranda warnings is not itself a constitutional violation, and the Miranda presumption "does not require that the statements and their fruits be discarded as inherently tainted." *Id.* Instead, so long as the unwarned statement was voluntary under the Fifth Amendment, the other evidence is admissible. *Id.* at 309, 105 S.Ct. at 1293.

■ A suspect's warned confession, given after he made unwarned and inculpatory statements, is admissible if the unwarned statements were voluntary. *Id.* at 308–09, 105 S.Ct. at 1292–93. In *Elstad*, the Supreme Court stated that "[a] subsequent administration of Miranda warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement." *Id.* at 314, 105 S.Ct. at 1296.[1]

■ Similarly, non-testimonial physical evidence, such as the shotgun, discovered due to an unwarned statement is admissible if the unwarned statement was voluntary. *United States v. Sangineto–Miranda*, 859 F.2d 1501 (6th Cir.1988). In *Sangineto–Miranda*, this Court refused to suppress narcotics found in a suspect's truck, even though the officers' knowledge of the existence and location of the truck was proximately derived from the suspect's unwarned and suppressible answer to a question from the officer. *Id.* at 1518.

■ Because the unwarned statements in question involve a consent to search, we apply the test set forth in

---

1. Even if the defendant's unwarned statements were not voluntary, the written confession was still admissible. Under *Elstad*, when a prior statement is coerced, the time that passes between confessions, the change in the locations of the interrogations, and the change in the identities of interrogators all bear on whether coercion has carried over into the second confession. *Elstad*, 470 U.S. at 310, 105 S.Ct. at 1293. In *United States v. Daniel*, 932 F.2d 517 (6th Cir.), *cert. denied*, 502 U.S. 890, 112 S.Ct. 252, 116 L.Ed.2d 206 (1991), this Court admitted a writ-

ten confession made pursuant to Miranda warnings and conducted by a different officer one day after an unwarned and possibly involuntary answer. *Id.* at 521. In the case at bar, the defendant's written confession occurred ten days after the unwarned statements, took place in a different location (the station house as opposed to Officer Davis's squad car and the defendant's residence), and involved a different interrogator (Investigator Derr as opposed to Chief Cannon and Officers Sylvester and Davis).

*Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), and its progeny. Whether a consent to search is voluntary is a question of fact, to be proved by the government, *id.* at 222, 93 S.Ct. at 2045, and determined from the "totality of all the circumstances." *Id.* at 227, 93 S.Ct. at 2048; *see also United States v. Scott,* 578 F.2d 1186, 1189 (6th Cir.), *cert. denied,* 439 U.S. 870, 99 S.Ct. 201, 58 L.Ed.2d 182 (1978). Those circumstances include "evidence of minimal schooling, low intelligence, and the lack of any effective warnings to a person of his rights," *Bustamonte,* 412 U.S. at 248, 93 S.Ct. at 2058, as well as evidence concerning "the youth of the accused," "the length of detention," "the repeated and prolonged nature of the questioning," and "the use of physical punishment such as the deprivation of food or sleep." *Id.* at 226, 93 S.Ct. at 2047. Further, the accused's knowledge of his right to refuse to consent is only one factor—not a prerequisite—in establishing voluntary consent. *Id.* at 249, 93 S.Ct. at 2059.

In *United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976), the Supreme Court applied *Bustamonte* to a defendant who consented to a search while in custody.[2] Specifically stating that "the fact of custody alone has never been enough in itself to demonstrate a coerced confession or consent to search," *id.* at 424, 96 S.Ct. at 828, the *Watson* Court identified a number of factors that led to a finding of voluntary consent, including the absence of any overt act or threat of force against the defendant; the absence of any promises to the defendant or any indication of "more subtle forms of coercion that might flaw his judgment"; the defendant's giving his post-arrest consent on a public street and not in the confines of the police station; the absence of any indication

that the defendant was "a newcomer to the law, mentally deficient, or unable in the face of custodial arrest to exercise a free choice"; and the defendant's receiving Miranda warnings and notification that the results of the search could be used against him. *Id.* at 424–25, 96 S.Ct. at 828; *see United States v. Blakeney,* 942 F.2d 1001, 1016 (6th Cir.1991), *cert. denied,* 502 U.S. 1008, 112 S.Ct. 646, 116 L.Ed.2d 663 (1991), *and cert. denied,* 502 U.S. 1035, 112 S.Ct. 881, 116 L.Ed.2d 785 (1992).

In the present case, the district court did not err in finding that the defendant voluntarily made the statements that provided the police with consent to search and led to the seizure of the shotgun. The defendant's arguments that his statements were coerced are without merit.

 The defendant first argues that he made the statements only because he thought the officers were arresting his girlfriend. Although the *Watson* Court recognized "subtle forms of coercion that might flaw [the defendant's] judgment," the defendant must show more than a subjective belief of coercion, but also some objectively improper action on the part of the police. The district court found as a matter of fact that Chief Cannon did not threaten to arrest the defendant's girlfriend. That finding is not clearly erroneous. The district court correctly held that the defendant's impression that the officers were arresting his girlfriend did not render his consent involuntary.[3]

 The defendant also attempts to use the fact of his arrest in his home to show coercion. If the officers had illegally arrested the defendant in his home, then this Fourth Amendment violation would have triggered a "fruit of the poisonous tree" anal-

---

2. *Bustamonte* involved consent given by a person who was not in custody and the Supreme Court had specifically limited its holding in the case to that situation. *Bustamonte,* 412 U.S. at 248, 93 S.Ct. at 2058–59.

3. The district court found that, when the defendant "pecked" at the car window and told Chief Cannon the location of the gun, he was in custody but not under custodial interrogation. Although the defendant does not explicitly make this argument, his fears concerning his girlfriend

do not convert that situation into a custodial interrogation. In *United States v. Montano,* 613 F.2d 147 (6th Cir.1980), the defendant was arrested and made unwarned but unelicited statements because he feared that his wife and child would also get arrested ("They don't know anything about it.... It's my stuff"). *Id.* at 149. This Court held that "his alleged fears for his wife and child do not alter the fact that the statements were not the product of a custodial interrogation." *Id.*

ysis to determine the admissibility of the shotgun and the written confession. *See United States v. Richardson*, 949 F.2d 851, 858–59 (6th Cir.1991); *United States v. Morgan*, 743 F.2d 1158, 1167 (6th Cir.1984), *cert. denied*, 471 U.S. 1061, 105 S.Ct. 2126, 85 L.Ed.2d 490 (1985). To find an illegal arrest in the home, the officers must have effected a warrantless and nonconsensual entry into the home to make the routine felony arrest. *Payton v. New York*, 445 U.S. 573, 576, 100 S.Ct. 1371, 1375, 63 L.Ed.2d 639 (1980). Here, the district court found that the defendant "had given consent to search the house prior to his arrest when the officers first pulled up" and the defendant did not appeal this ruling. A legal arrest in the home does not constitute evidence of coercion.

 Finally, the defendant asserts that the officers' failure to read his Miranda rights upon his arrest contributes to a coercive environment. The defendant is correct that this is an important factor. In *Watson*, the Supreme Court implicitly held that the lack of Miranda warnings was an element of coercion. *Watson*, 423 U.S. at 425, 96 S.Ct. at 828. In *United States v. Jones*, 846 F.2d 358 (6th Cir.1988), this Court emphasized the officers' failure in this regard.[4] *Id.* at 361. As *Elstad* and *Sangineto–Miranda* demonstrate, however, a Miranda violation by itself cannot require the exclusion of evidence gained as a result of the unwarned statements. We would create a Catch–22 were we to hold that, although a Miranda violation alone does not require the exclusion of evidence obtained as a result, a Miranda violation alone does demonstrate sufficient coercion to require such an exclusion. The defendant's first two arguments do not raise cognizable elements of coercion; his third argument, that his statements were coerced because unwarned, is insufficient to prevent a finding of voluntariness.

 The record demonstrates that the government satisfied its burden of presenting evidence that the defendant's second consent to search his home, and his statements related to that consent, were voluntary. Furthermore, although the district court did not provide this analysis, the record contains no evidence of the factors identified in *Bustamonte* and *Watson* which militate against a finding of voluntariness: Youth, minimal schooling, or low intelligence; repeated and prolonged questioning; physical punishment such as the deprivation of food or sleep; and promises made to him by the police officers. Finally, it is clear from the record that the defendant was not "a newcomer to the law," but had been arrested several times before.

We hold that the defendant's statements—beginning when he "pecked" at the squad car window and concluding when the police seized the shotgun—were voluntary. Therefore, the shotgun and written confession, obtained as a result of those statements, were admissible.

### III.

Because we affirm the district court's decision to deny the defendant's motion to suppress the evidence under the voluntariness analysis, we do not reach the district court's alternative grounds for denial under the inevitable discovery doctrine.

### IV.

For the foregoing reasons, the district court's denial of the motions to suppress evidence is **AFFIRMED**.

4. In *Jones*, this Court found that a consent to search was involuntary when the suspect was placed in custody and did not hear his Miranda rights. *Jones*, 846 F.2d at 361. However, we did not rely solely on the lack of Miranda warnings in that case, but found a second factor specifically listed in *Bustamonte*—the suspect's lack of schooling—which the defendant does not allege in this case. *Id.* at 360–61.