OPINION
Defendant-appellant, Michael J. Farrell appeals from his conviction and sentence for Possession of Drugs, following his no-contest plea to that charge. Farrell argues that the trial court erred by failing to suppress all of the statements he made to probation officers, as well as the physical evidence derived from those statements, on the ground that he had not been read his rights pursuant to Miranda v. Arizona (1966),384 U.S. 436, prior to being interrogated by the probation officers.
We conclude that the trial court erred by determining that Farrell was not "in custody" for purposes of Miranda until he was handcuffed. Farrell was in custody for purposes of Miranda when the officers from the probation department who were supervising his case refused to allow him to use the restroom without being accompanied by one of them, because a reasonable person in Farrell's situation would have believed that he was in custody, and not free to ignore the officers, at that point. Thus, the trial court erred by not suppressing Farrell's statement that the substance found by the probation officers was marijuana. However, we also conclude that the trial court did not err in refusing to suppress the physical evidence derived from Farrell's statements that were obtained in violation of Miranda, because non-testimonial physical evidence derived from statements obtained in violation of Miranda is not subject to exclusion under the "fruit of the poisonous tree" doctrine, unless the failure to issue Miranda warnings is accompanied by other coercive tactics amounting to a Fifth Amendment violation. Accordingly, the judgment of the trial court is Reversed, and this cause isRemanded for proceedings consistent with this opinion.
 I
In November, 1997, Farrell was sentenced to Electronicallly Monitored House Arrest, under the supervision of the Miami County Municipal Court Probation Department. Prior to being placed on the EMHA program, Farrell signed an agreement outlining the terms and conditions of his EMHA. Under the agreement, Farrell agreed to permit the Probation Department to enter his residence without permission, in order to maintain the EMHA equipment, and to verify his compliance with the conditions of the program, including one that prohibited him from possessing illegal drugs. As part of his supervision, Farrell was tested for drugs and visited by a probation officer, once a week.
On May 20, 1998, Probation Officer Brad Klein received an anonymous phone call informing him that Farrell was selling cocaine and marijuana from his home in Piqua, Ohio. Klein relayed this information to Probation Officers Jeremy Lorenzo and Rob Fulker, who went to Farrell's home to investigate. Upon their arrival, Farrell's sister, Colleen, answered the door and permitted the officers to enter the residence. After finding Farrell in his bedroom, the probation officers informed him that they needed to make a "quick search" of his bedroom to ensure that he was abiding by the rules of the EMHA agreement. Farrell told the officers that he needed to use the bathroom. Lorenzo told Farrell that he could "hold it." Farrell, however, insisted that he had "to go bad." The officers allowed Farrell to use the bathroom, but not without Fulker accompanying him there.
When Farrell returned, Lorenzo began searching his bedroom. In the top drawer of Farrell's dresser, Lorenzo found some small baggies containing a substance that appeared to be marijuana, a scale, and a crumpled-up piece of cellophane paper. When asked what the substance in the small baggies was, Farrell replied, "marijuana." At that point, the probation officers handcuffed Farrell, and contacted the Piqua Police.
Lorenzo told Farrell that he was going to conduct a thorough search of his bedroom, and that if there was anything else, Farrell should tell him now. Farrell told him there were more drugs in the bottom drawer of his dresser. Upon opening that drawer, Lorenzo found two full bags of marijuana. Lorenzo asked Farrell if there was any "acid" in the room. Farrell stated that Lorenzo had already found it, when he discovered the cellophane paper, which, unbeknownst to Lorenzo, had contained "two hits" of LSD. When Lorenzo expressed disappointment in Farrell, Farrell stated that he was sorry, and that he had "screwed up." After Officer Jerry Fogt of the Piqua police arrived, Lorenzo searched Farrell's wallet and found a large amount of cash. When Lorenzo asked Farrell if the money had come from drug sales, Farrell admitted that it had.
Farrell was taken into custody for violating the terms of his EMHA agreement. Farrell was subsequently charged with Trafficking in Drugs (Marijuana), pursuant to R.C. 2925.03, and Possession of Drugs (LSD), pursuant to R.C. 2925.11. Farrell moved to suppress any incriminating statements that he may have made, and any evidence obtained as a result of his interrogation by Lorenzo.
At the suppression hearing, Farrell testified that he repeatedly asked to see an attorney after he had been handcuffed. Colleen corroborated his testimony. Probation Officer Lorenzo and Officer Fogt testified that Farrell did not request to see an attorney during their encounter with him. However, Lorenzo and Fogt acknowledged that they never administered Miranda warnings to Farrell prior to taking him out of his residence.
The trial court found that Farrell had not requested an attorney, as he and his sister had testified. However, the trial court granted Farrell's suppression motion in part, holding that any statement Farrell made after he had been handcuffed, with the exception of Farrell's comment that he had "screwed up," was inadmissible, since Farrell had not been given the appropriateMiranda warnings. The trial court found that Farrell's statement that he had "screwed up" was not made in response to the "functional equivalent" of interrogation, since Lorenzo's expression of disappointment in Farrell was not reasonably likely to elicit an incriminating response from Farrell. The trial court also ruled that any statements Farrell had made prior to the time he had been handcuffed were admissible.
Farrell subsequently pled "no contest" to the charge of Possession of LSD, in exchange for the State's agreeing to dismiss the charge of Trafficking in Marijuana. The parties also agreed to jointly recommend community control. The trial court found Farrell guilty of the charge of Possession of LSD, and sentenced him to six months in prison.
Farrell appeals from his conviction and sentence.
 II
Farrell's sole assignment of error states:
 THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS WHEN IT WAS ESTABLISHED THAT APPELLANT WAS IN CUSTODY AND NOT FREE TO LEAVE FROM THE TIME THE PROBATION OFFICERS ARRIVED AT HIS RESIDENCE.
Farrell contends that the trial court erred by ruling that he was not "in custody" until he was handcuffed for purposes of determining when Miranda warnings had to be administered to him. Farrell argues that he was in custody by virtue of his being on EMHA, or, at the very least, by the time the probation officers insisted on accompanying him to the bathroom. Thus, Farrell contends, the probation officers should have issued Miranda
warnings to him at the time Fulker accompanied him to the bathroom, and that since they did not, all of the statements he made to the officers, along with any evidence derived as a result of those statements, should have been suppressed.
When a suspect is taken into custody or otherwise deprived of his freedom in any significant way by law enforcement officers, and is subjected to interrogation by those officers, the suspect's privilege against self-incrimination is jeopardized. Miranda,supra, at 478. In order to protect a suspect's privilege against self-incrimination, a law enforcement officer must inform the suspect, prior to questioning him, that he has the right to remain silent; that anything he says can be used against him in a court of law; that he has the right to the presence of an attorney; and that if he cannot afford an attorney, one will be appointed for him prior to any questioning if he so desires. Id.
A person is considered "in custody" for purposes of Miranda
when he is placed under formal arrest or his freedom of action is restrained to a degree associated with a formal arrest. Minnesotav. Murphy (1984), 465 U.S. 420, 430. In determining if a suspect's freedom of action is restrained to the requisite degree, the relevant inquiry is whether a reasonable person in the same position would have believed that he was under arrest. Berkemerv. McCarty (1984), 468 U.S. 420, 442. The factors a court should consider in applying this reasonable person test include whether the encounter takes place in surroundings that are familiar to the suspect; the number of law enforcement officers present, as well as their conduct and demeanor; the degree of physical restraint imposed; and the duration and character of the interrogation.State v. Salyer (Apr. 10, 1998), Miami App. No. 97 CA 39, unreported.
In situations where a suspect is under some type of confinement, there is a split of authority regarding the point at which Miranda warnings must be administered. At least one court has held that a law enforcement officer must administer Miranda
warnings prior to any questioning of a prisoner who is suspected of having committed a new offense, since the prisoner is considered to be "in custody" for purposes of Miranda analysis. See, e.g., United States v. Cadmus (S.D.N.Y. 1985),614 F. Supp. 367. Other courts have held, however, that a prisoner is not considered to be in custody for purposes of Miranda unless, as a result of the questioning, there is an added imposition on his freedom of movement, beyond that imposed by his existing confinement. State v. Peeples (1994), 94 Ohio App.3d 34, 41-42.
We conclude that the rule set forth in cases like Peeples is the correct one. To hold that a person in prison or under house arrest should automatically be deemed to be in custody for purposes of Miranda would afford those persons greater protection than those not in prison or under house arrest. Therefore, we reject Farrell's argument that he was in custody for purposes ofMiranda simply by virtue of the fact that he was under EMHA at the time he was questioned by Lorenzo. However, we agree with Farrell that he was in custody for Miranda purposes when the probation officers refused to allow him to use the bathroom without supervision.
A number of factors present in this case indicate that Farrell was not in custody prior to the time he was handcuffed. For instance, the incident took place at Farrell's residence; there were only two law enforcement officers present; Farrell was well acquainted with one of the officers (Lorenzo); and there was no evidence of any actual coercion by the law enforcement officers present. Nevertheless, these factors are outweighed by the fact that the probation officers refused to allow Farrell to use the bathroom without supervision. Not allowing Farrell to use the bathroom without being accompanied by a probation officer constituted an added imposition on his freedom of movement beyond the normal conditions of his EMHA. Furthermore, any reasonable person would have believed that he was essentially in custody at that point. Therefore, Farrell should have been advised of hisMiranda rights prior to being questioned by Lorenzo, after Farrell returned from using the bathroom under Fulker's supervision. The practical result of our ruling is that the trial court erred by not finding inadmissible Farrell's statement that the substance inside the small baggies was marijuana, when he was questioned on the matter by Lorenzo.
Farrell also argues that because Lorenzo failed to administer the Miranda warnings to him at the moment he was "in custody," the trial court should have suppressed all of the physical evidence derived from his statements, presumably meaning the larger bag of marijuana, the two "hits" of LSD on the cellophane paper, and the large amount of cash found in his wallet. We disagree.
Pursuant to the "fruit of the poisonous tree" doctrine, evidence otherwise lawfully obtained by law enforcement officers must be excluded at trial if it is derived from other evidence illegally seized by the officers, and if the officers' illegality amounts to a constitutional violation. Wong Sun v. United States
(1963), 371 U.S. 471; and Nix v. Williams (1984), 467 U.S. 431. A failure to issue Miranda warnings, standing alone, does not amount to a Fifth Amendment violation, since the requirement of Miranda
warnings is merely a prophylactic rule intended to avoid the likelihood of a violation of the Fifth Amendment privilege against self-incrimination. New York v. Quarles (1984), 467 U.S. 649,654; Oregon v. Elstad (1985), 470 U.S. 298, 306, fn. 1. Consequently, the fact that a defendant's statement was obtained by law enforcement officers in violation of Miranda will not taint any evidence discovered by the officers as a result of those statements, unless the failure to issue Miranda warnings is accompanied by other coercive tactics amounting to a Fifth Amendment violation. See United States v. Crowder (C.A.6, 1995),62 F.3d 782, 786 (non-testimonial physical evidence discovered due to an unwarned statement is admissible if the unwarned statement was voluntary); United States v. Elie (C.A.4, 1997),111 F.3d 1135, 1141-1143 (physical evidence discovered as a result of a statement obtained in violation of Miranda is not inadmissible on grounds that it is the fruit of the poisonous tree); and State v.Knuckles (Jan. 23, 1995), Butler App. No. CA93-11-222, unreported (physical evidence obtained as a result of a statement taken in violation of Miranda is nevertheless admissible). See, also Katz,Ohio Arrest, Search and Seizure (1999) 69, Section 2.13.
Here, the law enforcement officers involved did not use any coercive law enforcement tactics against Farrell, aside from their decision to interrogate him without first advising him of his rights pursuant to Miranda. Although Farrell and his sister testified that Farrell's requests to speak with an attorney were ignored, the trial court expressly found that their testimony was not credible. Thus, the physical evidence that was obtained as a result of Farrell's statements that were taken in violation ofMiranda is not subject to exclusion under the "fruit of the poisonous tree" doctrine set forth in Wong Sun.
In light of the foregoing, Farrell's sole assignment of error is sustained to the extent indicated.
 III
Farrell's sole assignment of error having been sustained to the extent indicated, the judgment of the trial court is Reversed, and this cause is Remanded for proceedings consistent with this opinion.
WOLFF and YOUNG, JJ., concur.
Copies mailed to:
Gary A. Nasal
Steven R. Layman
Hon. Jeffrey Welbaum