UNITED STATES of America,
Plaintiff–Appellee,

v.

Thomas E. DAVIS, Defendant–
Appellant.

No. 00–3974.

United States Court of Appeals,
Sixth Circuit.

Dec. 27, 2001.

Before JONES, NELSON, and DAUGHTREY, Circuit Judges.

DAUGHTREY, Circuit Judge.

The defendant, Thomas Davis, was convicted for being a felon in possession of a firearm and sentenced to 18 months in prison. He now raises ten issues on appeal, challenging various pretrial and trial decisions of the district judge. We find no reversible error and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arose from the tragic shooting of ten-year-old Tiffany Dunning by a 13–year–old neighbor, Tommy York, the son of defendant Davis. When police arrived at the scene, they knocked on the door of the home that the defendant shared with his then-girlfriend, now-wife, Andrea Boiken, who gave the officers permission to search the residence. Upon entering, the police found Tommy York hiding under the bedcovers in the master bedroom. The officers took the youth into custody before searching the immediate area and finding a shotgun under the bed. Additional investigation also uncovered the silver handgun used to kill Tiffany in the bushes in front of the home.

A short time later, the defendant returned to his home in response to a message he received at work from a family friend, alerting him to what had occurred. Detective Jack Bornfeld and Sergeant Brian Tecco each conversed with Davis, asking him if he knew how his son came to be in possession of the gun used to shoot the victim and whether the defendant knew if other guns were in the home. Davis volunteered information about the shotgun hidden under the bed, stating that the weapon had been left in the rental home by the previous tenant and that the defendant wished the firearm to be removed from the premises. The detectives did not consider the defendant a suspect in the shooting, did not place him into custody at that time, and, therefore, did not inform Davis of his rights against self-incrimination before beginning any questioning.

Approximately two months later, however, charges were lodged against Davis, eventually resulting in an indictment alleging that he was a felon in possession of firearms. During the subsequent trial for that federal offense, evidence of the police response and investigation of the shooting of Tiffany Dunning was introduced. Further testimony was offered by Deontae Wilson, a young friend of the defendant's son, who claimed that, on a visit to the defendant's residence prior to the fatal shooting, Davis had displayed both the shotgun and the pistol to the boys and warned them to stay away from his weapons. Other testimony was provided by Steven McMillian, a frequent visitor to a house in Davis's neighborhood, who claimed that during an altercation several weeks before Tiffany Dunning's death, the defendant had approached McMillian with a shotgun and threatened him with bodily harm. Other evidence offered by the prosecution included the testimony of a firearms expert who examined the weapons recovered from the defendant's residence and who stated that the pistol had been manufactured in California and the shotgun in Massachusetts. The parties also offered a stipulation that Davis, prior to his arrest in this case, had been convicted in Ohio of a crime punishable by a term of imprisonment exceeding one year.

Defense witnesses at trial included two friends of the defendant who testified that they had never seen Davis with firearms. Andrea Boiken also testified on behalf of her husband, explaining how she had found the two guns while cleaning the house as the couple was preparing to move into it. She stated that she told Davis that she would handle the disposition of the guns

and that she never told the defendant where she hid them until he arrived home on the day of the shooting. Davis himself corroborated Boiken's testimony and refuted the testimony offered by Deontae Wilson and Steve McMillian that intimated that he had handled either of the guns. Finally, he testified that, although he knew he was a convicted felon, he had continued to vote after his prior convictions and thus did not believe there were any impediments to his rights of citizenship.

Faced with the conflicting accounts of specific events offered by the prosecution and defense witnesses, the jury was forced to assess the credibility of those individuals. The jurors obviously credited the testimony offered by the prosecution witnesses and found Davis guilty of the offense with which he was charged. The district court then sentenced the defendant to 18 months in prison for his criminal act. The defendant now appeals to this court, alleging numerous legal errors in the government's case and in certain rulings made by the district judge prior to and during trial.

### DISCUSSION

#### 1. Sentences Imposed for Underlying Ohio Convictions

Defendant Davis first contends that he should not have been charged as a felon in possession of a firearm because while felonies, by definition, are offenses involving prison terms greater than one year, his underlying Ohio convictions did not result in such sentences. Specifically, he points to the fact that he served no prison time for either his prior 1989 or his 1991 conviction. He further highlights the fact that his suspended sentence for the 1989 conviction was only six months in duration and the fact that the suspended sentence for his 1991 conviction was for only 12 months.

Contrary to Davis's argument, however, the provisions of 18 U.S.C. § 922(g)(1) do not require that a defendant's prior sentence involve actual prison time in excess of one year. In fact, the statutory language provides simply that it is unlawful for an individual who has been convicted of "a crime *punishable* by imprisonment for a term exceeding one year" to ship or transport a firearm in interstate commerce, "or possess in or affecting commerce, any firearm or ammunition." (Emphasis added.) Davis does not, and indeed cannot, legitimately contend that the Ohio drug offenses for which he was convicted in 1989 and 1991 were not *punishable* by prison terms in excess of one year. Although he did not receive the lengthiest sentence permitted, the defendant was *subject to* being sentenced for his crimes to a prison term of up to 18 months. *See* O.R.C. 2929.14(A)(4) (designating the penalty for felonies of the fourth degree).

The defendant also argues that the felon-in-possession charge was improper because applicable federal statutes define a "crime punishable by imprisonment for a term exceeding one year" in such a manner as to exclude his predicate Ohio convictions. In support of that position, Davis reasons first that 18 U.S.C. § 921(20)(B) specifically excludes from the term "crimes punishable by imprisonment for a term exceeding one year" "any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less." The defendant also surmises that because the provisions of O.R.C. § 2925.01(*l*) applicable at the time of Davis's prior convictions specifically defined a "felony drug abuse offense" as "any drug abuse offense that would constitute a felony under the laws of this state, except a violation of section 2925.11 of the Revised Code," his convictions under O.R.C. § 2925.11 cannot be

considered felonies for federal criminal statute purposes.

At first blush, Davis's argument has some appeal. On closer examination, however, the fallacy of the defendant's logic is readily apparent. While, at the relevant times, the defendant's Ohio convictions may not have been termed "felony drug abuse offenses" for purposes of recidivist sentencing, they were still considered *felonies* (of the fourth degree), not misdemeanors. *See* O.R.C. § 2925.11(C)(1) (1987) and (1991 Supp.). Consequently, Davis's prior convictions could serve as disabling offenses supporting the subsequent federal felon-in-possession charge.

### 2. Equal Protection Challenge to § 922(g) Conviction

The defendant also insists that the increased punishment to which he was later subjected as a result of his relatively short prior sentences constitutes a violation of the equal protection clause of the federal constitution. Because no suspect classification or fundamental right is involved in such an analysis, we must examine Davis's claim only under the relatively deferential rational basis review standard. *See Romer v. Evans*, 517 U.S. 620, 631, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996). "Because plaintiff bears the burden of demonstrating that no rational basis exists for the statute, any conceivable basis is sufficient to sustain it, even if there is no indication that the suggested rationale actually motivated the legislature in enacting it." *Innes v. Howell Corp.*, 76 F.3d 702, 708 (6th Cir.1996).

■ As noted by the government, there is just such a rational explanation for treating felons with probationary sentences more harshly than misdemeanants with lengthier actual prison sentences. Even though a sentence imposed after a felony conviction may entail little or no incarceration, lawmakers are justified in later imposing more severe punishments upon those individuals who once committed offenses considered sufficiently serious that they were at least subjected to the *possibility* of long-term incarceration. This issue is thus without merit.

### 3. Commerce Clause Challenge to § 922(g)(1)

Defendant Davis next submits that the federalization of his possessory crime is unconstitutional because his passive possession of firearms in this case did not affect interstate commerce. Furthermore, Davis notes that it is, in fact, legal for him to have a firearm in his home according to relevant Ohio statutes. *See* O.R.C. § 2923.12(C)(3).

■ Despite the defendant's arguments to the contrary, however, we have consistently held that 18 U.S.C. § 922(g)(1) constitutes an appropriate exercise of Congress's commerce clause powers and appropriately entails a nexus, even though slight, with interstate commerce. *See United States v. Chesney*, 86 F.3d 564, 571–72 (6th Cir.1996). *See also United States v. Murphy*, 107 F.3d 1199, 1211–12 (6th Cir.1997); *United States v. Turner*, 77 F.3d 887, 889 (6th Cir.1996). In *Murphy*, moreover, we recognized decisions consistently supporting the proposition that "proof that a firearm was manufactured outside the state in which the possession occurred is sufficient to support a finding that the possession was in or affected interstate commerce." 107 F.3d at 1211 (quoting *United States v. Vincent*, 20 F.3d 229, 236 (6th Cir.1994)). Because the uncontroverted evidence in this prosecution established that the firearms recovered from Davis's home were manufactured in California and Massachusetts, sufficient testimony was adduced to justify the federalization of the felon-in-possession charge made against the de-

fendant. The fact that Davis's possession of the guns was merely "passive" does not, therefore, insulate that possession from being in or affecting interstate commerce.

■ Davis's claim that he may legitimately possess a concealed weapon in accordance with the provisions of O.R.C. § 2923.12(C)(3) is equally meritless. That statutory section does allow an individual to have a concealed firearm as long as the gun "was carried or kept ready at hand by the actor for any lawful purpose and while in the actor's own home." The statute's reach, however, does not extend to an individual "otherwise prohibited by law from having a weapon." O.R.C. § 2923.12(C). Because Davis's prior felony convictions render him unable to possess firearms legally, the state statute's affirmative defense cited by the defendant is inapplicable to his situation.

### 4. Right to a Representative Jury

Davis next contends, contradictorily, both that the jury empaneled to decide his case should have been drawn solely from Cuyahoga County, where the offense occurred, and that the jurors should have been chosen from a fair cross-section of the entire Northern District of Ohio. Because the empaneled jury was chosen only from counties surrounding Akron, the city where the trial was held, the defendant alleges that he was denied his right to "an impartial jury of the State and district wherein the crime shall have been committed." U.S. CONST. amend. VI. In a conclusory fashion, Davis also suggests that the jury did not represent a fair cross-section of the relevant community because no African–American citizens were seated on the panel.

■ Without question, the federal constitution provides a criminal defendant with a right to a trial in the judicial district in which the crime was committed. As

this court stated *en banc* in *United States v. Erwin,* 155 F.3d 818, 824 (6th Cir.1998), however, "there is no constitutional or statutory requirement that a defendant's trial take place in a specific courtroom or *division* within a federal judicial district." Furthermore, 28 U.S.C. § 1861 entitles litigants in federal courts only to juries "selected at random from a fair cross section of the community *in the district or division wherein the court convenes.*" (Emphasis added.) Because Cleveland and Akron are both within the Northern District of Ohio, Davis's trial could properly be held in Akron. Additionally, because of that venue, the jury pool need not necessarily include anyone from Cuyahoga County, a political subdivision within the Cleveland Division of the Northern District. The non-Cleveland draw for the defendant's jury thus violated neither federal constitutional nor statutory protections.

Davis also claims before this court that no African–American citizen sat on the jury that heard his case. Prior to trial, however, the defendant did not raise a challenge to the racial makeup of the panel. Even post-trial, Davis has not offered the statistical evidence or factual background necessary to evaluate such a claim properly. Instead, his entire argument and proof consists of the statement made in his memorandum accompanying his motion for a new trial that "defendant who was black or African–American, did not have any black jurors. Of the prospective jurors who appeared only one was an African–American. However, that juror was never even called nor seated or attempted to be seated in this case."

The United States Supreme Court has explicitly held that, in order to establish that a jury is not picked from a fair cross-section of the community, a defendant must show:

(1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). Davis's failure to meet these evidentiary burdens dooms his claim of a denial of equal protection guarantees.

### 5. Use of Defendant's Prior Convictions

Defendant Davis alleges additional errors were committed by the district judge when the court allowed the prosecution to cross-examine defense witnesses about their knowledge of Davis's prior felony convictions and when the government was permitted to question the defendant about a conviction more than ten years old. As with all evidentiary challenges, we review these allegations on appeal only to determine whether the district court abused its discretion in making its evidentiary rulings. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997); *Trepel v. Roadway Express, Inc.*, 194 F.3d 708, 716 (6th Cir.1999).

■ No such abuse of discretion is present in this case. Any error that may have been committed by the district court in allowing defense witnesses to be cross-examined concerning their knowledge of Davis's prior felony convictions was completely ameliorated by the fact that the government and defense counsel had previously introduced before the jury a stipulation conceding the defendant's status as a felon. Furthermore, no reversible error occurred when the prosecution questioned Davis on the witness stand about his 1989 conviction, a judgment that was entered more than ten years before the trial in this proceeding. Again, not only did Davis first discuss the prior conviction by referring to that judgment during direct examination, but the ten-year rule on impeachment evidence under Federal Rule of Evidence 609 is not applicable in establishing the predicate conviction in a felon-in-possession trial. In the latter instance, only the existence of the prior felony conviction is germane to the trial proceedings, not the age of that judicial determination.

### 6. Cross–Examination of Andrea Boiken

In his next issue, Davis contends that he was denied a fair trial by the prosecution's allegedly overly-aggressive cross-examination of the defendant's wife, Andrea Boiken. Specifically, he argues that the government improperly badgered the defense witness by highlighting the fact that she did not inform government officials prior to trial that the defendant was unaware that the guns involved in this prosecution remained in the house rented by Boiken and Davis. In response, the prosecution submits that it should be allowed to engage in such cross-examination to raise before the jury the possibility that Boiken's trial testimony regarding the defendant's innocence was recently fabricated.

■ The district judge did not abuse his discretion in allowing admission of Boiken's testimony on cross-examination. Moreover, even if any error had been committed, such error was clearly harmless. On redirect examination, the court allowed defense counsel to question Boiken about the exact details of the encounter the government believes should have led the witness to offer a defense for Davis. In that questioning, Boiken was able to explain that federal agents merely left a subpoena at her residence for her to appear before the grand jury and did not give her an

opportunity to exonerate her husband. Furthermore, even at the time the Cleveland police were at her home on the day of the shooting, no law enforcement official inquired of Boiken about the guns or spoke with her regarding Davis's knowledge of them. Under such circumstances, when the defense successfully explains allegedly damaging silence on the part of a witness, the district court does not commit reversible error in allowing governmental questioning to insinuate the testimony has been recently fabricated.

### 7. Destruction of Detective's Interview Notes

Davis next insists that he was denied due process when Detective Bornfeld testified before the jury despite the fact that his notes of his interview with the defendant had been destroyed before defense counsel was given an opportunity to review those recorded recollections. Indeed, the detective was allowed to recount how he had conversed with the defendant on the day of the unfortunate shooting and how Davis had mentioned that there were guns in his home and how he wished the police would remove those weapons from the premises. Yet, when the defendant requested to review the notes of that interview, he was informed that the crucial information no longer existed.

■ Despite the obviously poor practice of the officer in this case, the defendant cannot point to any prejudice he suffered as a result. First, Bornfeld himself testified repeatedly that he transferred all important information from his notes into his official report prior to discarding the pad on which he recorded the conversation with Davis. Second, Davis has not identified any potentially exculpatory information that would have been recorded by Bornfeld. Because Davis was a participant in the relevant conversation, he should be able to suggest any noteworthy

and beneficial evidence that should have been brought to light. Finally, one of the defense's own witnesses, Andrea Boiken, offered an explanation for the very information that Bornfeld related to the jury—that Davis appeared aware of the existence of the firearms in his home. In fact, Boiken stated before the jury that she herself had taken Davis aside prior to his conversation with Bornfeld and mentioned to him that the guns previously found by the couple when they moved into the home had not been discarded by her. Given these circumstances, the irregular actions of the Cleveland police did not result in any prejudice to the defendant.

### 8. Jury Instructions of Mens Rea Requirement of 18 U.S.C. § 922(g)(1)

While charging the jury in this case as to the applicable law, the district judge instructed:

The knowing possession of a firearm, which has moved in commerce by a convicted felon, is a violation of the laws of the United States. It is not necessary for the government to prove that the defendant knew that the firearm previously traveled in interstate or foreign commerce, nor is the government required to prove that at the time of possession the defendant knew that he was breaking the law.

It is sufficient if you find beyond a reasonable doubt that he knowingly possessed the item in commerce after being convicted of a felony offense.

The defendant now contends that such an instruction was erroneous and, in effect, converted the felon-in-possession charge into a strict liability offense. To avoid such a problem, argues Davis, the jury must be instructed that the defendant, in order to be found guilty, must have actual knowledge both of his felon status and of

the requirement that he not possess firearms. In challenging the jury charge, Davis further maintains that the instruction, as given, transforms 18 U.S.C. § 922(g)(1) into an unconstitutional bill of attainder that punishes an individual solely for his status as a felon.

■ However, Davis can cite this court to no case that supports his argument that due process principles require a felon in his position have specific knowledge of that felon status and of the resultant disability imposed by law on the possession of firearms before being guilty of a charge under 18 U.S.C. § 922(g)(1). As recognized by the Tenth Circuit Court of Appeals in *United States v. Capps*, 77 F.3d 350, 352 (10th Cir.1996), "the only knowledge required for a § 922(g) conviction is knowledge that the instrument possessed is a firearm." Moreover, that court noted that "no circuit has extended the knowledge component of § 922(g)(1) beyond the act of possession itself." *Id.* (citing *United States v. Langley*, 62 F.3d 602, 606 (4th Cir.1995); *United States v. Smith*, 940 F.2d 710, 713 (1st Cir.1991); *United States v. McNeal*, 900 F.2d 119, 121 (7th Cir. 1990); *United States v. Sherbondy*, 865 F.2d 996, 1001 (9th Cir.1988)).

Although we in this circuit have yet to address this exact issue in a published decision, we have held that the analogous provisions of 18 U.S.C. § 922(g)(9), which prohibit possession of a firearm by a person convicted of a misdemeanor crime of domestic violence, do "not require the government to prove that the defendant had actual knowledge that his possession of a firearm was illegal." *United States v. Beavers*, 206 F.3d 706, 710 (6th Cir.), *cert. denied*, 529 U.S. 1121, 120 S.Ct. 1989, 146 L.Ed.2d 815 (2000). Instead, the statute requires only that the defendant know that he is in possession of a firearm after being convicted of the requisite offense. *See id.* at 709. The same level of knowledge is all

that is required under 18 U.S.C. § 922(g)(1). The district court's jury instruction on the *mens rea* requirement for conviction of that offense was, therefore, proper.

■ Similarly, there is no merit to Davis's bill-of-attainder allegation. Contrary to the defendant's argument before this court, 18 U.S.C. § 922(g)(1) does not punish individuals solely because of their status as felons. Rather, the statute seeks to impose punishment upon individuals who have been adjudicated in a court of law as dangerous *and* who have taken the additional step of increasing the risk of violence to society in general by possessing firearms. Consequently, the defendant's *actions*, found by a jury beyond a reasonable doubt, not just his status, justify the criminal liability imposed upon him.

### 9. Alleged Amendment of Indictment By Jury Instructions

In another issue challenging the propriety of the jury instructions, Davis contends that the district court's charge to the jurors improperly amended the indictment by its definition of the phrase "in or affecting commerce." Because the defendant did not object to the charge at the time it was given by the district judge, however, our review of this issue is only for "plain error." *See, e.g., United States v. Tipton*, 11 F.3d 602, 611 (6th Cir.1993).

The indictment in this matter charged that Davis "did knowingly possess in and affecting interstate and foreign commerce" certain, specified firearms. When instructing the jury at the close of the trial evidence, the district court explained what "in or affecting commerce" meant by first defining the word "commerce" and then stating:

The government may satisfy the "in or affecting commerce" element by proving to you beyond a reasonable doubt that

the firearm or firearms described in the indictment had previously at some point in time traveled across a state line or a United States boundary. It is not necessary for the government to show that the defendant himself purchased the firearm or firearms in some other state or country or that he personally carried or transported the items across state lines or United States boundary. Similarly, the government is not required to show who originally purchased the items.

■ Davis now asserts that by defining a term that was not already defined in the applicable statute, the district court improperly amended and broadened the indictment. There is, however, no proscription that forbids a court from explaining to a jury a term whose definition is not self-explanatory. In fact, the United States Supreme Court approved a virtually identical jury charge in *Scarborough v. United States*, 431 U.S. 563, 566, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977), a case involving a conviction under 18 U.S.C. § 1202(a), the predecessor to 18 U.S.C. § 922(g)(1). Given that the Supreme Court found no error in the analogous definition of the phrase "in commerce or affecting commerce," the district court in this prosecution did not commit plain error in so charging the jury deliberating the defendant's fate.

*10. Motion to Suppress Oral Statements*

In his final issue, defendant Davis insists that the district court erred in denying his motion to suppress oral statements given by him to Detective Bornfeld and Sergeant Tecco shortly after arriving home in the aftermath of the tragic shooting. He claims that the law enforcement officials improperly questioned him about the location of firearms in his residence without informing him of the possibility that he could face criminal charges for violations of municipal ordinances.

Davis does concede that the full panoply of warnings regarding constitutional rights mentioned in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), is required only when a defendant is both in custody and is subject to interrogation. *See Rhode Island v. Innis*, 446 U.S. 291, 300–01, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980); *United States v. Crowder*, 62 F.3d 782, 785 (6th Cir.1995). Nevertheless, he submits that *some* information must be provided him about the potential consequences of anything he may say to the police before such a statement can be considered truly voluntary.

■ Prior decisions of this court foreclose adoption of such a position, however. In *United States v. Warner*, 971 F.2d 1189, 1200 (6th Cir.1992), for example, one of the co-defendants argued that, "although law enforcement agents need not go through the complete litany of *Miranda* rights and obtain a waiver of those rights from a suspect not in custody, a modification of the *Miranda* rule applies when the suspect is 'virtually in the position of a defendant.'" We disagreed and held unambiguously that the "officers were not required to give *Miranda* warnings ... because [the co-defendant] was not questioned in a custodial setting and was not under arrest or under any restraint, even though she was a suspect." *Id.* at 1202. *See also United States v. Mahan*, 190 F.3d 416, 421–22 (6th Cir.1999) ("*Miranda* warnings are not required 'simply because ... the questioned person is one whom the police suspect.'"). If law enforcement officials are under no constitutional obligation to provide warnings in non-custodial settings to individuals who are suspects or who are "virtually in the position of a defendant," the officers in this case certainly abridged no constitutional rights by failing to warn Davis of a potential municipal prosecution before their non-custodial encounter. Not only was the defendant not "in custody" at the time of the questioning, but the offi-

cers connected with the case were not then even concerned with tying Davis with any criminal activity. Instead, the admitted focus of the police investigation at that time was to ascertain whether additional weapons were hidden and available in the home and to understand how the 13–year–old shooting suspect could gain access to weapons that took the life of a ten-year-old girl. Under these circumstances, the district court did not err in denying Davis's motion to suppress the statements made to police without prior warnings regarding the possible consequences flowing from those conversations.

## CONCLUSION

On appeal, Davis has raised numerous allegations of error in the institution of this prosecution and in the conduct of his trial. For the reasons detailed in this opinion, however, we conclude that none of these issues rise to the level of reversible error. We therefore AFFIRM the judgment of the district court.