**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 05a0271n.06**
**Filed: April 8, 2005**

**No. 04-5713**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| *Plaintiff-Appellee*, | ) |
| | ) On Appeal from the United States |
| v. | ) District Court for the Eastern |
| | ) District of Tennessee |
| GARY W. HIGGINS, | ) |
| | ) |
| *Defendant-Appellant*. | ) |

Before: **BOGGS, Chief Judge; MARTIN**, **Circuit Judge**; and **WEBER, District Judge**.[1]

**PER CURIAM.**

Defendant-Appellant Gary W. Higgins brings this appeal from a district court order denying his motion to suppress evidence seized from his residence, as well as his subsequent statements. For the reasons stated below, we AFFIRM Higgins's conviction.

**I.**

Pursuant to a plea agreement in the trial court, Defendant Higgins pleaded guilty to one count of possession of a firearm by a convicted felon under 18 U.S.C. §§ 922(g)(1) and 924(a)(2), but reserved his right to appeal the denial of his motion to suppress. On appeal, he presents that single issue, urging that the district court erred by failing to suppress evidence obtained by the government through a warrantless search of his residence. A United States magistrate judge held an evidentiary

---

[1]The Honorable Herman J. Weber, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

hearing on Defendant's motion to suppress, and issued a report and recommendation concluding that Defendant's signed consent to the search that yielded the guns in question "was voluntary and knowing in all respects." The district court adopted that conclusion in denying Higgins's motion to suppress. That court's findings can be summarized as follows:

> On October 29, 2003, Deputy Tim Davis responded to a radio dispatch indicating a report of an individual firing a shot into a vehicle. In response to the call, Deputy Davis met the alleged victims, three male juveniles, at Chuckey Elementary School, which was near the site of the alleged shooting. The driver of the vehicle indicated to Deputy Davis that Gary Higgins had fired at his vehicle as they drove by Mr. Higgins' residence on Stone Dam Road near its intersection with Milligan Road. Deputy Davis observed a hole of approximately .38 caliber size just behind the driver's side door of the vehicle.

> Deputy Davis met up with Sergeant Milligan, who coincidentally resides on Milligan Road, knew the defendant, and was aware that the defendant was a convicted felon. Deputy Davis contacted Detective John Huffine, relayed the foregoing information, and sought instructions. As a result, Deputy Davis and Sergeant Milligan proceeded to the defendant's residence, while the juveniles were told to report to the sheriff's office in Greeneville.

> When Davis and Milligan arrived at the defendant's residence, and began approaching the front door of the single-wide trailer, the defendant exited his home, and met the officers in the front yard.

> While the defendant maintains that Sergeant Milligan had his weapon drawn, the officers testified that he did not. Even so, the defendant acknowledged that he approached the officers despite Milligan having his pistol out, and that Milligan returned the pistol to its holster.

> Officer Davis inquired as to whether there had been any problems earlier in the day. The defendant indicated that he had experienced problems with some juveniles, indicating that they had broken into his trailer. He went on to name one of the boys with whom officer Davis had spoken earlier. The defendant denied shooting at the vehicle.

> Deputy Davis asked if the defendant had any weapons on his person, to which defendant responded no. Davis testified that the defendant consented to a precautionary pat down, which the defendant did not dispute. It is undisputed that Deputy Davis removed some .38 caliber ammunition from the defendant's front pocket. What is disputed is whether Davis removed the shells before or after the

2

defendant was handcuffed. However, it is undisputed that the pat down occurred before the defendant was handcuffed, and Deputy Davis testified that he felt ammunition in the defendant's pocket during the pat down. According to Deputy Davis, during the pat down, he asked the defendant whether those were bullets in his pocket, to which the defendant responded yes.

Deputy Davis handcuffed the defendant and advised him of his *Miranda* rights. Davis then asked the defendant for permission to search his home, which the defendant refused to give. Davis then contacted Detective Huffine again to see if a search warrant could be obtained. Davis was instructed to secure the house while Huffine commenced obtaining a search warrant.

Davis then indicated to the defendant that a search warrant would be obtained, and again requested permission to search the residence, but the defendant again refused.

Next the defendant's sixteen-year-old son arrived, who was the only other resident of the home. The son requested to enter the home to change into his work clothes, but the officers refused. The son, perhaps with some encouragement from the officers, encouraged his father to consent to the search, and even offered to enter the house and bring the guns out, but the officers declined the offer. Thereafter the son left.

Deputy Davis acknowledged that he typically used language in such situations suggesting that things could be done "the easy way or the hard way," meaning that the search could be done either by consent or by warrant. Davis explained to the defendant that if he consented to the search, Davis would inform the federal authorities of the defendant's cooperation, to aid him in the federal prosecution that was likely to follow.

The defendant complained that the handcuffs were too tight, and Deputy Davis loosened them, though the defendant disputes when this was done. According to Deputy Davis, the defendant indicated that if Davis would handcuff the defendant's hands in front, rather than behind his back, he would consent to the search. However, the defendant testified that he consented to the search, and only then were his hands cuffed in front in order to allow him to sign the consent form. Even the defendant admitted that he commented on Deputy Davis's honesty with him as a motivation for signing the consent to search form. In fact, the defendant did not really point to any coercive statements by the officers, only the defendant's own subjective belief of what the officers meant by statements to him.

After entering the house with the officers, the defendant was very cooperative. The officers permitted him to sit on the couch, from where the defendant reached down and picked up a shoe containing a handgun, which he handed to the officers. The defendant also indicated that another weapon was located in the pocket of his jacket, which was hanging in the front room.

*See United States v. Higgins*, No. 2:03-CR-95 (E.D. Tenn. Feb. 3, 2004) (order adopting report and recommendation and denying motion to suppress). At the sentencing on June 10, 2004, Higgins admitted all facts alleged in the indictment and the statement of facts presented pursuant to Rule 11 of the Federal Rules of Criminal Procedure, as required by the terms of his plea agreement. The district court sentenced Higgins under the Federal Sentencing Guidelines to a term of imprisonment of 12 months and one day, followed by three years of supervised release.

## II.

In reviewing a district court's decision relative to a motion to suppress, this Court reviews findings of fact for clear error and conclusions of law *de novo*. *United States v. Stewart*, 306 F.3d 295, 304 (6th Cir. 2002). Where the district court has denied a motion to suppress, "the appellate court must consider the evidence in the light most favorable to the government." *United States v. Erwin*, 155 F.3d 818, 822 (6th Cir. 1998) (*en banc*). A "factual finding is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been made." *United States v. Smith*, 263 F.3d 571, 581 (6th Cir. 2001).

Although warrantless searches presumptively are illegal, *Katz v. United States*, 389 U.S. 347 (1967), an exception has been recognized where an individual voluntarily consents to a search. *United States v. Van Shutters*, 163 F.3d 331, 335 (6th Cir. 1998). The government bears the burden of demonstrating that the consent was given freely and voluntarily, not as the result of coercion or duress. *United States v. McCaleb*, 552 F.2d 717, 720 (6th Cir. 1977). If a defendant claims that his consent to a search was invalid, the court must ascertain from the "totality of all the circumstances" whether his consent was knowing and voluntarily. *United States v. Mendenhall*, 446 U.S. 544, 557 (1980).

Our *de novo* review confirms that the district court's conclusion that Higgins voluntarily consented to the search of his residence was based upon the court's assessment of the credibility of witnesses who gave conflicting testimony regarding the circumstances surrounding Higgins's consent. Aside from such credibility questions which the court reasonably determined against the defendant, the only evidence offered by the defendant to suggest coercion or duress was his own perception that Deputy Davis's allusion to "the easy way or the hard way" might have meant something other than with consent versus with a warrant. Under the law of this Circuit, however, "the defendant must show more than a subjective belief of coercion, but also some objectively improper action on the part of the police." *United States v. Crowder*, 62 F.3d 782, 787 (6th Cir. 1995). We agree with the district court's conclusion that the defendant failed do so in this particular case. *See United States v. Salvo*, 133 F.3d 943, 953-54 (6th Cir. 1998). We therefore AFFIRM the district court order denying Higgins's motion to suppress.