**UNITED STATES of America, Plaintiff–Appellee,**

v.

**James A. WRIGHT, Defendant–Appellant.**

**No. 03–3810.**

United States Court of Appeals, Sixth Circuit.

June 28, 2004.

Dwight Keller, U.S. Attorney Office, Dayton, OH, for Plaintiff–Appellee.

Cheryll A. Bennett, Office of the Federal Public Defender, Dayton, OH, for Defendant–Appellant.

BEFORE: GILMAN and COOK, Circuit Judges; and CLELAND,\* District Judge.

## OPINION

CLELAND, Disrict Judge.

Defendant–Appellant James A. Wright ("Defendant") was convicted on one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). He challenges his conviction, arguing that (1) the district court erred by admitting evidence relating to his state court admission and guilty plea to a charge of aggravated menacing under Ohio law, and (2) the prosecutor's comments made during closing argument constituted misconduct warranting a new trial. We AFFIRM the judgment of the district court.

## I. FACTS AND PROCEDURAL HISTORY

The facts surrounding the incident giving rise to this case occurred during the late hours of October 12, 2002 and extended into the early morning hours of October 13, 2002. On October 12, 2002, Shirley Hoerner finished her shift as a waitress at a restaurant in Englewood, Ohio and pulled into a Kwik–N–Kold beverage center in Dayton, Ohio. The Kwik–N–Kold establishment included a beverage drive-thru and Ms. Hoerner pulled her vehicle in line behind a burgundy Oldsmobile at the entrance to the store. Hoerner testified that when she moved up behind the Oldsmobile, she observed two men sitting in the front seat. She described the driver as a "dark-skinned black man, thin in build, wearing a black leather jacket," and the passenger as a "brown-skinned gentleman with a rounder face, [wearing] Cleveland Browns clothes [ ] and a brown jacket." Hoerner also observed a third, thinly-built, black male wearing dark clothes standing outside of the entrance to the Kwik–N–Kold. Next, Hoerner claimed that the man standing outside of the entrance approached her car and started beating on her windshield, demanding that she back up. Hoerner refused to back up, but rather put her vehicle in park, started to exit her car, and told the man to get off of her vehicle. The man stopped hitting her windshield and began talking to the occupant of a third car that had since pulled in line behind Hoerner.

Hoerner returned to her vehicle and locked the door. The burgundy Oldsmobile then backed up closer to her car and the man sitting on the passenger side pointed a gun at her, demanding in less than civil language that she back up. At trial, she testified that the passenger pointed a large caliber black metal pistol at her for less than a minute. Hoerner, however, refused to back up. Nevertheless, the driver continued "backing up slowly right in front of her" until the Oldsmobile was within one foot of her front bumper. The driver of the Oldsmobile eventually maneuvered into an adjacent alley, turned around, and both men departed the scene. Hoerner was able to make note of the color, make, model, and license number of the vehicle before it departed.

After the incident, Hoerner purchased some beer and snacks and drove home. When she arrived home, she called 911 to report the incident. Dispatch issued an alert message at approximately 12:42 a.m., indicating the time, date, location, and na-

---

\* Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

ture of Hoerner's incident at the Kwik–N–Kold. After receiving the alert message, Dayton Police Officers Amber Baca and Eric Brown observed a vehicle fitting the description of the one described by Hoerner and executed a traffic stop on the burgundy colored Oldsmobile for making an unlawful right turn. As soon as the vehicle stopped, the man seated on the passenger's side, later identified as Defendant, exited the vehicle and began running away. Officer Brown gave chase, eventually apprehending Defendant approximately three blocks from the location of the traffic stop. Officer Brown handcuffed Defendant, patted him down (no firearm was on his person), and placed him in the back seat of a nearby police cruiser, that of Officer Daniel Zwiesler. Officer Zwiesler then drove Defendant back to the scene of the traffic stop in his patrol car. Dayton police identified the driver of the Oldsmobile as Andre Lamar Player. They also discovered that the car was registered to Larisha J. Spear, Lamar Player's girlfriend and mother to three of his children. Ms. Spear testified that she had lent her car to the driver.

After Defendant's apprehension and return to the traffic stop, Hoerner arrived to participate in a show-up of the two apprehended suspects. She positively identified the burgundy Oldsmobile and both suspects. She specifically identified Defendant as the man who had pointed the pistol at her while waiting in line at the store. While on the scene, the officers also pried open the glove box of the Oldsmobile and recovered a handgun.

Defendant was arrested for aggravated menacing and transported to the Montgomery County Jail. Police also retrieved a key for the glove box of the Oldsmobile and a wallet from underneath the back seat of the police car transporting Defendant (officer Zwiesler's patrol car). The police did not fingerprint the pistol recovered from the glove box. Based on a complaint sworn by Hoerner, Defendant was charged with the misdemeanor offense of aggravated menacing in violation of Ohio Revised Code § 2903.21.[1] On October 25, 2002, Defendant, represented by counsel, appeared in Dayton Municipal Court on the aggravated menacing charge and entered a guilty plea.

Defendant was subsequently indicted on a single count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) on November 27, 2002 and entered a plea of not guilty in federal court. On March 3, 2003, the government filed a motion in limine seeking to introduce evidence of Defendant's guilty plea in Dayton Municipal Court in its case in chief. Defendant filed a response to the government's motion on March 4, 2003. Because there were no facts stated upon any record which establish the specific underlying conduct to which Mr. Wright pled guilty, Defendant argued that the evidence of his state court admission and prior plea was not relevant to the federal charge and should be excluded under Rules 401 and 402 of the Federal Rules of Evidence. In addition, he argued that even if the district court found the evidence relevant to estab-

---

1. Ohio Revised Code § 2903.21 provides in relevant part:

(A) No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family.

(B) Whoever violates this section is guilty of aggravated menacing. Except as otherwise provided in this division, aggravated menacing is a misdemeanor of the first degree.

lish a violation of 18 U.S.C. § 922(g), the evidence should have been excluded because its probative value was substantially outweighed by its danger of unfair prejudice under Rule 403.

The court first considered the government's motion seeking admission of Defendant's October 25, 2002 plea colloquy from state court during a final pretrial conference. The district court initially denied, without prejudice, the government's request to use the state court admission contained in the plea transcript. The district court also determined that the evidence at issue was not governed by Federal Rule of Evidence 404(b) and specifically noted that, "depending on the defense raised by Wright, whether in chief or as raised in cross-examination . . ., [the admission in the plea transcript] may [later] become relevant."

Before trial, the parties stipulated to the following facts: (1) the pistol recovered from the burgundy Oldsmobile was operable; (2) the pistol was manufactured outside the State of Ohio; (3) Defendant had been convicted of a crime punishable by a term of imprisonment exceeding one year prior to October 13, 2002; and (4) the pistol was the same one recovered from the burgundy Oldsmobile.

On March 10, 2003, the government renewed its motion in limine to introduce the admission made by Defendant during his plea in Dayton Municipal Court. The government argued that, based on Defendant's opening statement and cross-examination of the prosecution's witnesses, the admission contained in the plea transcript was relevant to Defendant's identity, presence, and possession of the handgun at issue. The government argued that Defendant had raised the issue of his identity and presence in the burgundy Oldsmobile on the night in question and that his admission in the plea transcript was relevant to show possession of the handgun when it was considered in light of other evidence suggesting that Defendant never exited the vehicle and was not driving it. The government argued that "common sense would dictate that the passenger would have brandished some form of weapon to place Ms. Hoerner in fear or apprehension."

After considering the positions of the parties, the court denied the government's motion a second time. The district court's denial was based on its conclusion that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice and confusion of the issues. The district court expressed concern that the admission in the state court plea did not contain facts describing a weapon.[2]

2. The following is a portion of the redacted state court transcript that was ultimately admitted into evidence:

**THE DEFENSE:** THAT IS A CORRECT STATEMENT YOUR HONOR. WE WITHDRAW FROM OUR FORMER NOT GUILTY PLEA AND ENTER A PLEA OF GUILTY TO THE CHARGE OF AGGRAVATED MENACING AS CHARGED.

**THE COURT:** AND MR. WRIGHT AT THIS TIME HOW DID YOU WISH TO PLEAD ON THE CHARGE OF AGGRAVATED MENACING?

**MR. WRIGHT:** GUILTY.

**THE COURT:** AND YOU DO UNDERSTAND THAT IF YOU PLEAD GUILTY YOU ARE GIVING UP YOUR RIGHTS TO A TRIAL AND A JURY TRIAL IF YOU WISH?

**MR. WRIGHT:** YES, SIR.

**THE COURT:** HAS ANYBODY PROMISED YOU ANYTHING OR THREATENED YOU TO GET YOU TO PLEAD GUILTY?

**MR. WRIGHT:** NO.

**THE COURT:** DO YOU UNDERSTAND THAT A PLEA OF GUILTY IS AN ADMISSION OF THE FACTS CONTAINED IN THE COMPLAINT?

**MR. WRIGHT:** YEAH.

The next day, however, the government raised the admissibility of Defendant's admission in Dayton Municipal Court for a third time. On March 11, the government argued that unless the Defendant entered a stipulation agreeing that he was in the burgundy Oldsmobile on the night in question, Defendant's identity and presence was still in issue and that his previous admission in state court was significantly probative in establishing that Defendant was present in the vehicle at the time he allegedly pointed a gun at Hoerner. Defendant elected not to enter a stipulation.

The district court concluded that Ms. Hoerner's identification of Defendant as the man who pointed a firearm at her had been contested by Defendant in a number of ways. The district court reexamined the disputed evidence, and permitted the government to use the plea transcript in its case in chief for the purpose of showing Defendant's presence at the scene.

The district court agreed with the government and permitted the introduction of the plea transcript subject to two explicit caveats: (1) the testimony was to be presented in the form of an admission as opposed to a conviction; and (2) the court would issue a limiting instruction to be reviewed by the parties. The court modified its prior evidentiary ruling based on two things. First, the district court stated: "the Court finally has risen to the occasion and now understands the prosecution's desire to offer this testimony to show presence and not necessarily to show there was a gun in the defendant's hand." Second, the court concluded that the attack of Hoerner's credibility placed the Defendant's presence in issue and that Defendant's state court admission was admissible on this issue. The court also expressly recognized that introduction of Defendant's state court admission relating to menacing conduct might corroborate other evidence in the case and show that Defendant was present and, in fact, had an altercation with Hoerner on the night in question.[3]

Defendant maintained a continuing objection to the introduction of the guilty plea transcript from state court and made a final objection to the use of this evidence by the government during its closing argument. Defendant objected to the extent that the government made use of the evidence to support a finding that Defendant had actual possession of a firearm. The court, however, overruled Defendant's objection during closing. The court also instructed the jury, both before and after closing arguments, as follows: "Evidence of the defendant's admissions in Dayton Municipal Court was offered by the government to show that the defendant was

The state criminal complaint sworn by Ms. Hoerner, also admitted, states, in relevant part:

JEROME C [lined out and hand written "James"] WRIGHT (DEFENDANT), IN DAYTON, MONTGOMERY COUNTY, OHIO, ON OR ABOUT OCTOBER 13, 2002, DID COMMIT THE OFFENSE OF AGGRAVATED MENACING IN VIOLATION OF SECTION 2903.21.M1, OHIO REVISED CODE IN THAT HE DID UNLAWFULLY AND KNOWINGLY CAUSE SHIRLEY HOERNER TO BELIEVE THAT HE WOULD CAUSE SERIOUS PHYSICAL HARM TO HER PERSON OR PROPERTY.

The complaint contains no specific facts describing the incident or indicating that Defendant possessed a firearm as asserted during Hoerner's testimony.

3. The parties do not dispute that Defendant's guilty plea is excluded from the definition of hearsay as an admission by a party opponent under Fed.R.Evid. 801(d)(2)(A). Also, misdemeanor guilty pleas may be admissible as admissions against a party under Rule 403. *Hancock v. Dodson*, 958 F.2d 1367, 1371–72 (6th Cir.1992).

present during the early morning hours of October 13th, 2002, at the Kwik–N–Kold ... when the interaction with Shirley Hoerner occurred. If you believe the defendant was present, you, the jury, must still decide whether he possessed a firearm, since he has denied that he possessed a firearm at that time by means of his plea of not guilty to this charge in this court." Although he objected to any use of the plea transcript. Defendant did not object to the wording of the court's limiting instruction.

The jury returned a guilty verdict against Defendant on March 12, 2003. On May 23, 2003, the court sentenced Defendant to 120 months incarceration, three years of supervised release and a $100.00 special assessment.

Defendant appealed, arguing that the district court abused its discretion by concluding that the admissions contained in the state court plea transcript were relevant and admissible under Rules 401, 402, and 403 of the Federal Rules of Evidence, and that the government's comments during closing argument, suggesting that the plea evidence supported the inference not only that Wright was present but also that he possessed a firearm, constituted prosecutorial misconduct entitling Defendant to a new trial.

## II. STANDARD OF REVIEW

We review the district court's evidentiary rulings for an abuse of discretion. *Paschal v. Flagstar Bank*, 295 F.3d 565, 576 (6th Cir.2002); *United States v. Sassanelli*, 118 F.3d 495, 498 (6th Cir.1997); *see also General Elec. Co. v. Joiner*, 522 U.S. 136, 141, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997) (a district court's evidentiary rulings are reviewed for an abuse of discretion). Under this standard of review, "this court takes a maximal view of the probative effect of the evidence and a minimal view

of its unfairly prejudicial effect, and will hold that the district court erred only if the latter outweighs the former." *Sassanelli*, 118 F.3d at 498; *Paschal*, 295 F.3d at 576. "An abuse of discretion occurs when we are left with the 'definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of relevant factors' or 'where [the trial court] improperly applies the law or uses an erroneous legal standard.'" *Paschal*, 295 F.3d at 576–77 (quoting *Huey v. Stine*, 230 F.3d 226, 228 (6th Cir.2000)).

Allegations of prosecutorial misconduct contain mixed questions of fact and law that we review *de novo*. *United States v. Green*, 305 F.3d 422, 429 (6th Cir.2002); *United States v. Francis*, 170 F.3d 546, 549 (6th Cir.1999).

## III. DISCUSSION

### A. The District Court Did Not Abuse its Discretion In Admitting the Disputed Evidence

■ The lower court concluded that evidence of Defendant's state court admission was relevant and admissible. "Evidence which is not relevant is not admissible." Fed.R.Evid. 402. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R.Evid. 401. Among the things necessary to prove that Defendant was guilty of the charged offense was the fact that Defendant was the man who was described by Hoerner as holding a gun in a threatening manner. To establish this fact, the government was entitled to show that Defendant was present at the scene of the gunplay.

Defendant argues that his presence at the Kwik–N–Kold was not at issue, chiefly because defense counsel said in her opening statement that Defendant did "not dispute" that he was present. However, if that issue was thought to have been put to bed by the opening statement, Defendant's subsequent trial activity succeeded in arousing it.

After her opening statement, Defendant's counsel staked out a degree of flexibility for her client on this issue. Extensive cross examination of the complaining witness focused on alleged failures to correctly identify the Defendant or his attire at the time of Hoerner's 911 call, and was followed by Defendant's refusal to stipulate to his presence at the scene when challenged to do so. Defense counsel argues now that her questioning of Hoerner was done only "for credibility purposes," apparently suggesting that it was not done specifically to question whether Defendant was present at the scene of the action. We are not persuaded. At trial, defense counsel seems to have been playing both sides of the street on the question of Defendant's presence. Perhaps this was inadvertently done, but the net effect was that the opportunity (indeed, the necessity) for additional government evidence on this point remained open. By vigorously attacking the credibility of Hoerner, Defendant maintained, or perhaps more accurately, reasserted his presence at the scene as a disputed issue despite defense counsel's declarations to the contrary during opening statement. The government was therefore not relieved of its burden to prove the element of firearm possession (including the physical presence necessary to have done so) beyond a reasonable doubt. Defendant's state court admission provided support to Hoerner's testimony and thus potentially added to the credibility of her statements in the eyes of the jurors. The evidence was relevant to establishing Defendant's presence as Hoerner described. The government is afforded substantial latitude in presenting evidence to make its case, *see Old Chief v. United States,* 519 U.S. 172, 186–87, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997) (the prosecution generally is entitled to prove its case by evidence of its own choice), and the district court correctly concluded that the government should bear its burden to establish Defendant's presence.

Although the statements associated with Defendant's state court plea do not directly prove that he possessed a firearm on the night in question, they do directly prove that he was there and that he was doing something to "menace" the complaining witness. Defendant admitted, under oath, that he was present on the night in question and that he knowingly caused Hoerner to believe that he would cause serious physical harm to her person or property. It obviously corroborates, in part, Hoerner's testimony and the other circumstantial evidence of presence and possession. It is highly relevant.

■ In addition, the district court did not abuse its discretion in admitting this relevant evidence after a Rule 403 analysis. Relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403; *Paschal,* 295 F.3d at 577. "Unfair prejudice" in the context of Rule 403 means an undue tendency to suggest a decision based on improper considerations; it does not include the prejudicial "damage to a defendant's case that results from the legitimate probative force of relevant evidence." *United States v. Bilderbeck,* 163 F.3d 971, 978 (6th Cir.1999); *see also*

*United States v. Lucas,* 357 F.3d 599, 606 n. 2 (6th Cir.2004). When reviewing the district court's Rule 403 determination, this court must view the evidence in a light most favorable to its proponent, giving maximum reasonable probative force to the evidence and minimizing its reasonable prejudicial value. *Sassanelli,* 118 F.3d at 498.

The district court initially examined the Defendant's admission in his state court plea and ruled that the danger of unfair prejudice, confusion of the issues, and of misleading the jury substantially outweighed its probative value. The court based its initial determination on the lack of specific facts relating to the firearm in either the plea transcript or the sworn complaint charging Defendant with aggravated menacing under Ohio law, and it is undisputed that the evidence at issue does not contain a dialogue specifically mentioning the use of a firearm.

After its initial decision to deny the government's motion to introduce the state court admission without prejudice, the district court reexamined the issue and altered its Rule 403 determination, allowing the government to introduce the evidence. The following excerpt from the record explains much of the lower court's rationale for allowing the state court admission into evidence.

The Court: Okay. So, the use of this testimony as to the admission in the Dayton Municipal Court is not used, I don't want to put words in your mouth, you're not seeking to use this testimony to show that [Defendant] had a weapon on the night in question, *although to the extent that corroborates Miss Hoerner's testimony, so be it,* you're using this testimony to show that the individual in the passenger's seat that fled from the police is the same individual that 15 minutes before, was at the Kwik–N–Kold, am I correct?

Mr. Keller [Counsel for the Government]: You are, your Honor.

The Court: And what you're trying to show, although this has not been argued by the defense, is that the defendant was not a late arrival to this maroon slash burgundy vehicle, but rather had been in it from the time it was at the Kwik–N–Kold on. Is that your argument?

Mr. Keller: It is, your honor.

The Court: Okay. Having narrowed the issue in that fashion, [Ms. Bennett], is there a response?

Ms. Bennett [Counsel for Defendant]: Your Honor, I still think that that is prejudicial. If you, assuming that the conviction is let in for that purpose, it is still prejudicial to, extremely prejudicial to Mr. Wright because the only conclusion that the jurors could arrive from that testimony, or from that, from those facts would be he pled guilty to doing something that caused this woman serious, that she was in serious physical harm.... The questions that were asked of Ms. Hoerner were proper questions to pretty much impeach her credibility as far as her recollection of the events. The events as she indicated were that she told the 911 person that they pulled a gun. She could not specifically say if the passenger pulled a gun or if the driver pulled a gun. She said they pulled a gun. She never narrowed it down to anyone as to who she saw pull that gun as far as my recollection of the events go from the questions that I asked her. Mr. Wright has not put any testimony forth to say that he was not at the Kwik–N–Kold....

The Court: Well, I agree that the testimony, if I admit it, would be prejudicial. The issue is whether it would be

unfairly so. If you accept [the government's] theory for purposes of argument, admitting this testimony will show that he was present, or at least had a confrontation, admittedly, with [Ms.] Hoerner on the night in question, it would still be up to the jury to decide whether this confrontation involved the use of a gun or not.

And if the jury concludes that defendant having admitted he had a confrontation with Shirley Hoerner, if the jury concludes that there are aspects of Shirley Hoerner's testimony that are sufficiently believable to put a gun in his hand, I don't think there's anything, you know, I question whether there's anything improper on that.

So I agree with you, it's prejudicial. But having reframed the purpose for the testimony, I really question whether it's unfairly so.

> .        .        .        .        .

The Court: Okay.... The reason convictions are not allowed, except in very tightly circumscribed areas is so that the jury will not conclude: Well, this guy did something before, therefore, he must have done whatever it is he's on trial for as well.

This is a conviction that is not offered for the purpose of showing that he was convicted before, *but rather that he made an admission that he had a confrontation with [the victim] on the night in question and as such I don't think it's an improper use of a conviction.*

(Jt. Appendix at 394–98 (emphasis added).) The court permitted the government to use the disputed evidence for the purpose of establishing the presence of Defendant at the scene and acknowledged that such an introduction would corroborate other testimony or evidence in the case. The district court also issued a limiting instruction regarding the use of this evidence.

Any potential of unfair prejudice in admitting this evidence derives from the possibility that the jury might wrongly conclude that because Defendant committed the Ohio offense, he had a general propensity to commit other crimes and therefore must have committed the instant offense. The danger arises only from the context of his admission—a criminal conviction—and is equivalent to the danger Rule 404(b) cautions against as it prohibits the introduction of other crimes or acts to prove the character of a person to show action in conformity therewith. Fed.R.Evid. 404(b); *Lucas*, 357 F.3d at 604–05.

Here, the admission was neither introduced pursuant to 404(b) nor used in a manner that would have offended the Rule if it had been. The evidence was introduced only as a Rule 801(d)(2)(A) admission that Defendant engaged in menacing conduct (and was physically present in order to do so). Defendant's admission properly pointed to the possibility that he may have "menaced" her by pointing a firearm. Defendant's admission, made under oath, was certainly inconsistent with the contention that he did not possesses a firearm on the night in question, but any "prejudice" in this sense is not "unfair" as contemplated by Rule 403. *See Lucas*, 357 F.3d at 606 n. 2. The admission by Defendant, when viewed in light of all the evidence, is substantially probative of how Defendant may have acted on the night in question and, as the district court noted, may corroborate other evidence of possession in the case.

Defendant also argues that the district court should have considered alternative means to establish Defendant's identity and presence at the scene of the alleged possession of the firearm. *See Merriweather*, 78 F.3d at 1077. Although other means to prove Defendant's presence at

the scene were available to the government, the district court ruled that the cross-examination of the government's witnesses, particularly Hoerner, left his presence at the scene for the jury to determine. The chief alternative means to establish Defendant's presence, therefore, consisted of the testimony that was so pointedly attacked in cross examination. Thus, in order to rebut the attack on the credibility of the witnesses for the government, the evidence in question became more significantly probative to show that Defendant was there and admitted an altercation of some kind with Hoerner. Consideration of other means to prove Defendant's presence does not diminish the strong probative value of the Defendant's state court admission.

Defendant also argues that the government urged the jury to use the evidence to make an improper inference regarding possession of the firearm. Defendant cites the following excerpt of the government's closing in support of his position:

Mr. Keller: The evidence has shown that at that particular point in time at that particular location, the defendant, James A. Wright, is sitting in the front passenger's seat of the red 1995 Oldsmobile Cutlass. He is not behind the wheel. He has no ability to in any way, shape or form operate or engage that vehicle to go forward or backward.

And he has admitted that he has unlawfully and knowingly caused Shirley Hoerner to believe that he would cause serious physical harm to her person or property.

Now, how would one do that by never exiting the car? We've heard testimony neither the driver, Andre Player, nor the defendant in this front passenger seat left the car. The answer is obvious. When you're pointing a loaded 9–millimeter Norinco semi-automatic pistol at someone, you are placing that other person in serious, in fear of serious physical harm to her person or property.

Ms. Bennett: Your Honor, I'm going to object.

The Court: I'll overrule.

Mr. Keller: When you point a loaded 9–millimeter semi-automatic pistol at someone, you are placing the person that you are pointing that at in fear of serious physical harm to person or property.

The district court's decision to overrule Defendant's objection and its statement that to the extent that the plea admission "corroborates Miss Hoerner's testimony, so be it" reveals that the district court did not view the government's use of evidence in final argument as improper or one in violation of the court's ruling. The government did not appeal to Defendant's conviction or status as a criminal to argue that the jury should find him guilty of the federal charge. It did not make a propensity argument. The government merely used Defendant's admission to corroborate other testimony and as circumstantial evidence that supported the logical conclusion that Defendant was present, menaced Hoerner, and might have possessed a firearm in so doing. Moreover, the district court instructed the jury, both before and after closing arguments, on the limited use of the evidence related to Defendant's guilty plea, emphasizing that the jury had to determine whether Defendant possessed a firearm. When taking a maximal view of the probative value of the evidence and minimizing the danger of unfair prejudice associated with Defendant's admission to the Ohio criminal offense, it is evident that district court did not abuse its discretion.

### B. Proper Foundation

■ Defendant also argues that the district court erred by admitting the evidence

without a proper foundation. *See United States v. Kilburn*, 596 F.2d 928 (10th Cir. 1978) (requiring proof that defendant in current trial is the same as in the prior conviction before admitting prior conviction). Defendant argues that the evidence may have established that an individual named James A. Wright had been charged with a crime occurring at the same time and place involving Shirley Hoerner, but it did not establish that the person pleading guilty was Defendant. Although the government's brief does not address this potential defect, review of the record shows that the district court had sufficient foundation to admit the evidence. First, the government called the deputy bailiff who tape-recorded the plea hearing at issue. In fact, the deputy bailiff for the state court judge testified that he was present during the state court hearing, that Defendant was also present, and that Defendant's voice was the voice on the tape of the hearing. Defendant did not object to this testimony. Second, the government called the court reporter who transcribed the recorded plea hearing. Third, it called the records custodian to testify to the authenticity of the criminal complaint made by Hoerner. This evidence, coupled with the identification of Defendant as the person involved in the incident leading to both state and federal criminal charges, provided the lower court with sufficient foundation.

## C. The Government's Remarks During Closing Argument Did Not Constitute Misconduct

In reviewing claims of prosecutorial misconduct based on improper statements, we employ a two-part test. *United States v. Galloway*, 316 F.3d 624, 632 (6th Cir.2003); *United States v. Carroll*, 26 F.3d 1380, 1387 (6th Cir.1994). First, we must determine whether the remarks were improper. Second, if the remarks are deemed im-proper, we must determine whether the remarks were flagrant and warrant reversal. *Galloway*, 316 F.3d at 632.

In determining whether improper remarks are flagrant and warrant reversal, we examine four factors: (1) whether the statements tended to mislead the jury and prejudice the defendant; (2) whether the statements were isolated or pervasive; (3) whether the statements were deliberately placed before the jury; and (4) whether the evidence against the accused is otherwise strong. *Id.* None of the four factors are determinative, but reversal is not warranted unless we find that proof of the defendant's guilt is not overwhelming, the defense objected to the statements, and the trial judge did not cure the impropriety through admonishment to the jury. *Id.*

■ The government's remarks during closing were simply not improper and therefore did not unfairly prejudice Defendant. In describing its change of position regarding the admissibility of the plea transcript containing Defendant's admission, the district court determined that such evidence would be admissible, notwithstanding Defendant's Rule 403 objection, for the limited purpose of establishing Defendant's presence at the scene of the alleged possession of the firearm. However, the court also expressly recognized that admitting this evidence would also tend to corroborate Hoerner's testimony. Furthermore, the court denied Defendant's objection during closing argument when the government used the plea admission to corroborate Hoerner's testimony and to show that Defendant's confrontation with Hoerner involved the brandishing of a firearm. The district court identified a potential danger of unfair prejudice as the danger that a jury might conclude "[w]ell, this guy did something before, therefore, he must have done whatever it is he's on trial

for as well." As discussed above, the prosecutor's statements during argument did not ask the jury to make a propensity inference based on Defendant's character or admission to another criminal offense. The remarks reflected fair comment and reasonable inferences that could be drawn from the relevant evidence by the jury.

Lastly, the record contains other strong evidence suggesting that Defendant possessed a firearm. The evidence adduced at trial supporting proof of possession or constructive possession under 18 U.S.C. § 922(g) includes eyewitness testimony that Defendant had actual physical possession when he pointed the gun at Hoerner, and evidence that he was sitting in the passenger seat behind the glove box in which the firearm was ultimately found, coupled with evidence that a key to that glove box was recovered from under a seat in the police car that transported Defendant.

## IV. CONCLUSION

The district court did not abuse its discretion in admitting evidence of Defendant's admission and state court guilty plea and the government did not commit prosecutorial misconduct. Accordingly, the judgment of the district court is AFFIRMED.