56 F.3d 65
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff - Appellee,
v.
Allen Randy McCLAIN, Defendant - Appellant.
 No. 94-3192.
 United States Court of Appeals, Sixth Circuit.
 May 25, 1995.
 
 Before: KENNEDY and NORRIS, Circuit Judges, and TAYLOR, District Judge*.
 MEMORANDUM OPINION
 PER CURIAM.
 
 
 1
 Defendant-Appellant Allen Randy McClain ("McClain") appeals his conviction and sentencing in the United States District Court for the Northern District of Ohio. For the reasons stated below, we AFFIRM.
 
 STATEMENT OF THE CASE
 
 2
 On February 6, 1992, two men robbed the University Park Branch of National City Bank in Akron, Ohio. Tellers Lisa Cook and Robyn Moore, acting manager Janet Esterle, as well as customers Philip Bibey and Thomas Doyle were present. One of the robbers brandished a gun and hit Doyle on the head with its handle. The robbers escaped with $12,472.
 
 
 3
 On April 6, 1992, a second robbery was executed by only one robber at this same branch. Tellers Moore and Cook were again present, with teller Jeannie Thornburg and manager Patty Kent, but without customers. This robber also brandished a gun, and escaped with $14,280.72.
 
 
 4
 Appellant McClain later became a suspect and on June 2, 1992, Akron Police and FBI Special Agent Michael Daugherty went to a Glenwood Avenue address in Akron where McClain was known to be an occasional visitor. They knocked and were admitted by the owner, Collette Myers, who advised that McClain was not there. However, because of mirrors at the top of the stairwell, the officers were able to observe a person at the head of the stairs. The officers saw the person step away and heard thumping noises, after which McClain came downstairs and was arrested. Officers then conducted a search of the house, to which the owner consented, and discovered two firearms in a brown pouch under the upstairs bathroom sink.
 
 
 5
 McClain was indicted on two counts of armed bank robbery, in violation of 18 U.S.C. Sec. 2113 (a) and (d), two counts of carrying a firearm during a crime of violence, in violation of 18 U.S.C. Sec. 924(c), and one felon-in-possession of a firearm count, in violation of 18 U.S.C. Sec. 922(g)(1). The jury convicted him on all counts, and he was sentenced, pursuant to the Armed Career Criminal Act ("ACCA"), to a term of imprisonment for 188 months on Counts 1, 3, and 5, a consecutive term of 5 years on Count 2 and a consecutive term of 20 years on Count 4. He filed a timely appeal of which this court has jurisdiction pursuant to 28 U.S.C. Sec. 1291 and 18 U.S.C. 3742(a)(3)(A).
 
 ANALYSIS
 1. Admission of Exhibit 11
 
 6
 Of numerous errors claimed, McClain first argues that because the government willfully failed to disclose Exhibits 11 and 30 in discovery, he was substantially prejudiced when the district court erroneously admitted Exhibit 11 at trial. We review matters of discovery and evidentiary rulings of the district court for abuse of discretion. United States v. Bartle, 835 F.2d 646, 649 (6th Cir. 1987), cert. denied, 485 U.S. 969 (1988). Exhibit 11 is a color photograph of McClain, which had been taken in June, 1992, after his arrest in this matter, and which demonstrated that McClain's hair was black at the time of the arrest. Exhibit 30 is a black and white photograph of McClain, taken a few days later. Exhibit 22 is a photographic array, which includes an enlargement of exhibit 30. This array, including Exhibit 30, was produced in discovery. At McClain's September, 1992 trial, however, his hair was gray, and he wore a long moustache with gray ends. Prosecution witnesses described the armed bank robber at the February and April robberies as having black hair, and McClain's counsel cross-examined the first five of them with the suggestion that their identification of McClain must be incorrect, as they had described a robber with no gray hair, other than his moustache. On the third day of trial, the government presented Exhibits 11 and 30 to Agent Daugherty during direct examination, to show that McClain's hair was not gray at the time of arrest, and that he then wore a short moustache. Over defense objection the court admitted Exhibit 11, although the government had not produced it during pre-trial discovery, despite McClain's requests pursuant to Rule 16 of the Federal Rules of Criminal Procedure. A black and white copy of that photograph, however, had been furnished.
 
 
 7
 McClain argues that the court's admission of this photograph violated his Fifth Amendment right to a fair trial, because the government had willfully withheld the exhibits. He argues that, if the evidence had been provided as required, his defense counsel would not have pursued this avenue of misidentification. The evidence does not support a claim of willfulness, however. The government had not intended to use either Exhibit 11 or Exhibit 30 in its case-in-chief, and its first five witnesses had already identified McClain in the courtroom as the robber despite his gray hair and longer moustache. Although McClain also argues that he was unfairly prejudiced, having been "seduced" into a defense which the government then rebutted using previously withheld evidence, he had been provided a black and white copy of the exhibit, and such a defense could have been seen as problematic, at that time. Moreover, because this evidence was of strong probative value on an issue not raised until his counsel's cross-examinations, any prejudice sustained was not unfair.
 
 
 8
 McClain also contends that admission of Exhibit 11 deprived him of fundamental due process of law, regardless of the government's good faith, on the basis of Brady v. Maryland, 373 U.S. 83, 87 (1963). In Brady, however, the Court held that the prosecution may not withhold requested evidence material either to guilt or to punishment which is favorable to an accused. As these photographs were not evidence favorable to the accused, Brady is inapposite, here.
 
 
 9
 Although McClain also argues that reversal is mandated by the government's noncompliance with Rule 16,[1] such a failure to comply is not grounds for reversal unless the nondisclosure has prejudiced the defendant's substantial rights. United States v. Brown, 871 F.2d 80, 82 (8th Cir. 1989). Here, such prejudice did not occur, and we find no abuse of discretion in admission of the photographs.
 
 
 10
 2. Admission of the Photographs of the Bank Customer's Head Wounds
 
 
 11
 Appellant also claims error in admission of Government Exhibits 10(a) and 10(b), which were photographs of head wounds sustained by bank customer Doyle when struck by Appellant's gun handle. Appellant argues that these photographs were unduly prejudicial and without probative value. We review this ruling for abuse of discretion. United States v. Brady, 595 F.2d 359, 361 (6th Cir.), cert. denied, 444 U.S. 862 (1979). A court may exclude relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice...." Fed.R.Ev. 403. In reviewing the court's ruling, we must view the evidence in the "light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." Brady, 595 F.2d at 361 (citations omitted). In Brady, we determined that the district court did not err in admitting photographs of the bodies of three victims in a pool of blood, where the photographs were highly probative on the issue of whether they were killed in the course of a bank robbery. Id. at 361-362. While we recognized that the photographs were not "absolutely necessary" to prove that element of the crime, we nevertheless determined that their probative value outweighed any potential prejudice. Id. at 362.
 
 
 12
 In this case, Doyle testified that one of the robbers hit him on the head with a pistol, resulting in injury. The district court determined that the pictures were not excessively "gory," and were relevant to the proofs required of force and violence. The head wounds from blows with this weapon also provide essential corroboration of the testimony of all eyewitnesses that McClain indeed possessed a firearm during these robberies. That fact is a contested one here. The wounds photographed could not have been inflicted with the toy gun which Appellant now argues was equally probable, on the evidence. Moreover, no reasonable robber would have attempted to administer such a head blow with the butt of a mere toy gun. On this record, the probative value of these photographs outweighed whatever unfair prejudice they bore, and the court did not abuse its discretion in their admission.
 
 
 13
 3. Denial of Motion to Suppress Identification Evidence
 
 
 14
 McClain next claims error in the district court's denial of his motion to suppress the identification evidence of tellers Moore and Thornburg, because the photo arrays shown them were so impermissibly suggestive as to cause a substantial likelihood of irreparable misidentification. We review the denial of a motion to suppress identification evidence under the "clearly erroneous" standard. United States v. Hamilton, 684 F.2d 380, 383 (6th Cir.), cert. denied, 459 U.S. 976 (1982).
 
 
 15
 The burden rests upon Appellant to demonstrate that the courtroom identifications were based upon an impermissibly suggestive pre-trial procedure. See United States v. Causey, 834 F.2d 1277, 1286 (6th Cir. 1987), cert. denied, 486 U.S. 1034 (1988). To make such a showing, Defendant must demonstrate that: (1) the police performed an unduly suggestive photographic lineup, and (2) the unfair suggestiveness was conducive to a "very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384 (1968). To determine whether a photographic lineup was unduly suggestive, "a court must consider several factors, including the size of the array, the manner of presentation by the officers, and the contents of the array." United States v. Thai, 29 F.3d 785, 808 (2d Cir.), cert. denied, 115 S.Ct. 496 (1994).
 
 
 16
 In Manson v. Brathwaite, 432 U.S. 98 (1977), the Supreme Court listed factors a court should weigh in determining whether an identification is reliable even though an unduly suggestive identification procedure may have been used. These factors are: (1) the witness' opportunity to view the criminal at the time of the crime; (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and confrontation. Id. at 114.
 
 
 17
 The district court here properly found that the witnesses' in-court identifications of McClain were not produced by unduly suggestive arrays. Agent Daugherty had shown a photographic array to each of three witnesses. Each witness identified a photograph of McClain as the robber. At the suppression hearing and at trial, these three witnesses again identified McClain as the robber. Each of the factors suggested by Manson, supra, indicates that reliable identifications have been made.
 
 
 18
 Agent Daugherty showed Government's Exhibit 22, a photographic array consisting of six black males, to Jeannie Thornburg and Philip Bibey. From this array, both chose photograph #3, which was the photograph of McClain. Thornburg was positive that it was the picture of the man who robbed the bank. Bibey "thought" it was the robber. Robyn Moore viewed two photographic arrays. Agent Daugherty showed her the first array, Government Exhibit 20, which contained a photograph of Clifford Upton. Moore chose Upton as someone who resembled the robber, except that the robber's lips were fuller, he did not have slicked hair, and he had a different facial expression. Later, after McClain had become a suspect, Detective Snyder showed Moore Government Exhibit 21. Snyder testified that he showed Moore five photographs, and she looked through all of them before picking the photograph of McClain. He also testified that Moore said that she was "100 percent sure" that McClain was the robber. Moore only remembered being shown two photographs. She did recall identifying the picture of McClain as the robber.
 
 
 19
 The dispute as to the number of photographs shown to Moore in the second array is the only indication that the presentation or composition of the array may have been suggestive. The district court made careful findings of fact after hearing the testimony, and denied suppression. The court considered the totality of the circumstances as required, found that Moore had enough time to view the robbers, and was certain in her identification of McClain. On these facts, we cannot find that the court's decision to deny the motion to suppress was clearly erroneous. Therefore, we affirm on this issue.
 
 
 20
 4. Admission of Evidence Obtained from the Search at 38 Glenwood
 
 
 21
 Appellant contends that admission of the firearms found during the search of Collette Myers' home was erroneous, because the firearms were fruits of a search conducted without consent. An objection to admission of evidence that is not made at trial is waived, absent plain error. United States v. Meyers, 952 F.2d 914, 917 (6th Cir.), cert. denied, 112 S.Ct. 1695 (1992). In this Circuit, an error is "plain" if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." United States v. Chalkias, 971 F.2d 1206, 1212 (6th Cir.), cert. denied, 113 S.Ct. 351 (1992) (citations omitted). In this instance, McClain has made no showing that plain error occurred.
 
 
 22
 First, as merely an occasional visitor to Ms. Myers' home, McClain did not have standing to contest the search. United States v. Sangineto-Miranda, 859 F.2d 1501, 1510 (6th Cir. 1988). However, even assuming that he did have such standing, Myers did as well, and she consented to the search. Although Myers claimed she signed the form after the search, the court credited the testimony of two government witnesses, Agent Daugherty and Officer Offert, that she gave her consent before they searched her home. This fact finding was not clearly erroneous, and we do not disturb the court's credibility determination. Thus, we affirm on this issue.
 
 
 23
 5. Sufficiency of the Evidence that the Robber's "Gun" was a Firearm
 
 
 24
 Appellant argues that there was insufficient evidence for a jury to find that the apparent weapons brandished by the same robber in February and April were indeed firearms as required by 924(c).[2] In reviewing a claim of insufficient evidence, the standard is whether the evidence, viewed in the light most favorable to the government, could be accepted by any rational trier of fact as establishing every essential element of the crime charged. Jackson v. Virginia, 443 U.S. 307, 319 (1979). In Sec. 921(a)(3), a "firearm" is defined as:
 
 
 25
 (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.
 
 
 26
 18 U.S.C. Sec. 921(a)(3).
 
 
 27
 Other circuits have determined that the testimony of an eyewitness that a bank robber was carrying a gun is sufficient evidence to prove the firearm element of Sec. 924(c). Parker v. United States, 801 F.2d 1382 (D.C. Cir. 1986), cert. denied, 479 U.S. 1070 (1987); United States v. Jones, 907 F.2d 456 (4th Cir. 1990), cert. denied, 498 U.S. 1029 (1991). In Parker, the D.C. Circuit determined that the testimony of two tellers, who described that bank robber's weapon as a "silver" gun with a "vinyl-looking" brown handle, and "a pistol, [a] small one, like the policemen use," with a brown handle, was sufficient evidence for a jury to find that the weapon was a firearm. 801 F.2d at 1383-1385. Similarly, in Jones, the Fourth Circuit expressly stated that "[t]he government need not present expert testimony to support a conviction under Sec. 924(c). (citations omitted). As five eyewitnesses testified that a gun was used in the robbery, there was evidence from which rational triers of fact could find guilt beyond a reasonable doubt on the firearms charge." 907 F.2d at 460.
 
 
 28
 In this case, teller Moore described the weapon as a black revolver, teller Cook believed it was a .38 caliber gun, and customer Bibey and manager Esterle called it a gun. Customer Doyle professed some expertise with guns in testifying:
 
 
 29
 Sir, I know my guns. I know them good enough. I was brought up around with them, and I work and repaired quite a few pistols in my time. It's my best recollection I will say that was a .38. What I call a blue barrel which is all blue except for the wooden grips on it.
 
 
 30
 (Joint Appendix at 138). Viewing this evidence in the light most favorable to the government, a reasonable jury could conclude that the weapon possessed by McClain was indeed a firearm. Therefore, we affirm on this issue.
 
 
 31
 6. Sufficiency of the Evidence of Possession for Conviction Under Sec. 922(g)
 
 
 32
 McClain argues that there was insufficient evidence for a jury to find that he was a felon in possession of a firearm under Sec. 922(g). We review this claim under the Jackson v. Virginia sufficiency of the evidence standard, as described above. To obtain a conviction under Sec. 922(g), the government must prove that the defendant (1) was convicted of a felony and (2) possessed a firearm that had moved through interstate commerce. 18 U.S.C. Sec. 922(g). In this case, McClain stipulated to a previous felony conviction, but argues insifficient evidence to support a finding of possession.
 
 
 33
 A defendant's possession of an object may be exclusive or joint, and actual or constructive. United States v. Craven, 478 F.2d 1329, 1333 (6th Cir.), cert. denied, 414 U.S. 866 (1973). Constructive possession means that a person did not have actual possession, but knowingly had the power and intention to control the object, directly or through others. Id. Constructive possession may be proven by combining a defendant's presence and substantial other incriminating evidence. United States v. Poulos, 895 F.2d 1113, 1119 (6th Cir. 1990). This evidence may be direct or circumstantial, and need not "remove every reasonable hypothesis except that of guilt." Craven, 478 F.2d at 1333.
 
 
 34
 In this case, the evidence showed that McClain was upstairs in Myers' house just before he was arrested. When he left the stairs for a few seconds officers heard a door shut, and a heavy metal object drop. Then, McClain came downstairs and was arrested. Upstairs, officers found a brown pouch containing two firearms in the cabinet under the bathroom sink, which was only eight feet from the stairwell. The opening and shutting of the cabinet door made the same noise that the officers had heard when they were downstairs.
 
 
 35
 Although Myers testified that the pouch belonged to her, she had not seen it in six months, the length of her acquaintance with McClain. Two of his other female acquaintances testified that they had seen McClain carrying the pouch. One witness, Patricia Taylor, had carried the pouch, and stated that it felt like heavy metal was inside. McClain's presence near the guns, coupled with the substantial other incriminating evidence presented, was sufficient to establish constructive possession and we affirm on this issue.
 
 
 36
 7. The Armed Career Criminal Act Enhancement
 
 
 37
 McClain contends that the enhancement of his sentence under the Armed Career Criminal Act ("ACCA")[3] was improper because of the age of his prior convictions, which would not be considered under the United States Sentencing Guidelines in the computation of a criminal history. See U.S.S.G. Sec. 4A1.2(e).
 
 
 38
 This Court, however, addressed and rejected the same argument in United States v. Moreno, 933 F.2d 362 (6th Cir.) cert. denied, 112 S. Ct. 265 (1991). We stated that:
 
 
 39
 Sec. 4A1.2 does not affect the statutory range set pursuant to 18 U.S.C. Sec. 924(e). When the statutory criteria of Sec. 924(e) are met, the section provides for a statutory minimum penalty of fifteen years. United States v. Carey, 898 F.2d 643 (8th Cir. 1990). Although the Sentencing Guidelines may restrict the sentencing court's consideration of certain past offenses, Sec. 924(e) does not.
 
 
 40
 Id. at 373. In this instance, the statutory criteria were met, and McClain's convictions of violent felonies in 1972, 1978 and 1982 did not become statutory nullities by the passage of time. Therefore, McClain's allegation of error on this ground is without merit.
 
 8. The Double Jeopardy Claim
 
 41
 Next, McClain argues that his sentences for commission of a felony with a firearm, consecutive to the armed robbery sentences, placed him in jeopardy twice for the same offense, in violation of the federal Constitution. We first note that other circuits addressing this issue have sustained consecutive sentences for violations of Sec. 2113(d) and Sec. 924(c).[4] See, e.g., United States v. Simpson, 979 F.2d 1282 (8th Cir. 1992), cert. denied, 113 S.Ct. 1345 (1993); United States v. Bauer, 956 F.2d 239 (11th Cir.), cert. denied, 113 S.Ct. 469 (1992); United States v. Holloway, 905 F.2d 893 (5th Cir. 1990); United States v. Harris, 832 F.2d 88 (7th Cir. 1987); United States v. Shavers, 820 F.2d 1375 (4th Cir. 1987); United States v. Blocker, 802 F.2d 1102 (9th Cir. 1986). Section 924(c), as amended in 1984, provides that:
 
 
 42
 Whoever, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years.... (emphasis added).
 
 
 43
 18 U.S.C. Sec. 924(c).
 
 
 44
 This statute indicates a clear Congressional intent to address the defendant convicted of the commission of a felony with a firearm even when, as here, that defendant also may be sentenced pursuant to another statute for committing the same crime with a deadly or dangerous weapon. In Missouri v. Hunter, 459 U.S. 359, 368 (1983) the Supreme Court held that the Double Jeopardy Clause is not offended when Congress "specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct..." Therefore, McClain's convictions and sentences under Sec. 924(c) must be affirmed, because Congress clearly intended for cumulative sentences to apply to defendants found guilty under Sec. 2113.
 
 9. Ineffective Assistance of Counsel
 
 45
 Finally, McClain claims constitutionally deficient representation by his attorney. Although as a general rule we do not consider ineffective assistance claims for the first time on appeal, we will address them where the record is adequate to assess their merits. United States v. Wunder, 919 F.2d 34, 37 (6th Cir. 1990). The Court is satisfied after examination of this record that trial counsel in this case fell well within the objective standard of reasonableness set forth in Strickland v. Washington, 466 U.S. 668 (1984).
 
 
 46
 Strickland provides that a defendant challenging the effectiveness of his counsel must demonstrate the following:
 
 
 47
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
 
 
 48
 466 U.S. at 687. Our review of counsel's representation must be "highly deferential". Id. at 689. Appellant must overcome presumptions that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment", and that counsel's actions "'might be considered sound trial strategy."' Id. at 689-690.
 
 
 49
 The first alleged error is counsel's failure to file pre-trial motions to suppress the evidence found at the search of Myers' home. The record reveals, however, that McClain expressly ordered counsel to file no pre-trial motions, because he wanted the speediest possible trial. Moreover, even if counsel had filed motions to suppress, credible testimony established consent by the premises owner to the search. The lawfulness of the search was fully litigated at trial.
 
 
 50
 Second, McClain alleges that he was prejudiced by counsel's failure to pursue a defense implicating an earlier suspect, Clifton Upton, instead of Defendant. However, while Moore did state that Upton resembled the robber, she also noted that he had the wrong lips, hair and expression. Further, when McClain was presented as a suspect, Moore confidently identified him as the robber, as did all other eyewitnesses. This avenue of defense was pursued by counsel, and proved fruitless by the overwhelming evidence.
 
 
 51
 Finally, McClain claims that counsel inadequately moved for acquittal under Rule 29. However, review of the record reveals that counsel's Rule 29 motion was appropriate to the facts and law available. Moreover, even if the Rule 29 motion were inadequate, McClain has suggested no other which might have proved more successful. On this record, it is clear that counsel's representation fell well within the objective standard of reasonableness, as set forth in Strickland, and McClain's convictions and sentence cannot be reversed on this ground.
 
 
 52
 * * *
 
 
 53
 Accordingly, for the reasons noted above, we AFFIRM the judgment of the district court.
 
 
 
 *
 The Honorable Anna Diggs Taylor, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Rule 16(d)(2) provides the following sanctions which a court may impose upon a party who has failed to comply with a discovery order:
 [T]he court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances.
 Fed. R. Crim. P. 16(d)(2)
 
 
 [2]
 18 U.S.C. Sec. 924(c)(1) provides, in relevant part:
 Whoever, during and in relation to any crime of violence or drug trafficking crime...uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years...
 
 
 [3]
 The Armed Career Criminal Act, 18 U.S.C. Sec. 924(e)(1), provides:
 In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).
 
 
 [4]
 This Circuit has already addressed the double jeopardy issue in the context of 18 U.S.C. Sec. 2119, the armed carjacking statute. In United States v. Johnson, 22 F.3d 106 (6th Cir. 1994), we determined that the Double Jeopardy Clause is not offended when a defendant is punished under both Sec. 924(c) and Sec. 2119