**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 10a0290n.06**

**No. 08-5412**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**May 12, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellee*, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| **CARLOUS LEON CLARK**, | ) | **O P I N I O N** |
| | ) | |
| *Defendant-Appellant*. | ) | |

**BEFORE:    MERRITT, COLE, and COOK, Circuit Judges.**

**COLE, Circuit Judge.**  Defendant-Appellant Carlous Leon Clark appeals his conviction for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).  This charge arose after Clark shot Eric Chandler in the arm, and police found a gun in Clark's rental car two days later. Clark argues that the district court erred by (1) not suppressing the gun, (2) admitting into evidence two photographs taken of Chandler after he had been shot, and (3) excluding evidence of Chandler's previous felony convictions.  For the reasons set forth below, we **AFFIRM** Clark's conviction.

## I.  BACKGROUND

### A.  Factual background

On the night of April 7, 2006, Clark went to Sholanda Buchanan's home at 355 Hatton Street in Jackson, Tennessee.  Clark and Buchanan, who is Chandler's sister, had been dating for several months.  However, Buchanan had plans to go out with another man that night, who arrived at

Buchanan's home around the same time as Clark. Soon after Clark arrived, the other man left, and Buchanan and Clark started to argue. During their argument, they began to struggle over Buchanan's cell phone, during which time she received a call from Chandler. Unbeknownst to Buchanan, Chandler was at a nearby house, and he headed over to her house following their brief conversation.

Buchanan's and Clark's testimony differed significantly as to what happened next. According to Buchanan, she was struggling to get Clark out of her front door as he was holding onto her by her collar. She reached for a liquor bottle on her dresser and used it to hit Clark on the head. At that point, Chandler arrived at his sister's house, grabbed Clark, and pulled Clark out of the doorway and down the porch steps. Chandler told Clark to leave, and Clark departed in his car. However, Clark returned to Buchanan's house moments later and continued to argue with Chandler, who was standing outside the house. Buchanan testified that Clark then drew a pistol and fired three shots at Chandler, the second shot striking Chandler's arm. Buchanan then ran back into her house, followed by her brother, and then Clark. Buchanan locked herself in her bedroom. Chandler ran out the back door of the house, apparently chased by Clark. Buchanan testified that she heard two more gunshots, fired either inside the house or in her backyard. Buchanan left her room and went outside in time to see Clark get into his car and drive off.

In contrast, Clark testified that after he grabbed Buchanan's phone, he headed towards his car. As he reached his car, Chandler came out of nowhere and pinned him against the car, yelling at him to return the phone to Buchanan. While Clark was pinned against the car, Buchanan took the phone from him, went back into her house, and grabbed the liquor bottle. According to Clark, Buchanan came back out of the house and hit him in the face with the bottle while he was still

pinned against the car. Buchanan then headed back towards the house and Chandler began beating

Clark next to his car. According to Clark, a gun fell from Chandler's waistline as Chandler was

beating him. Clark picked up the gun and fired it at Chandler five times, until it was empty. In

shock, Clark dropped the gun on the ground and left in his car.

The police arrived at Buchanan's house shortly thereafter and issued a "be-on-the-lookout"

or "BOLO" order for Clark, describing his car and mentioning the handgun. When the police

arrived, Chandler already had gone to a hospital to have his gunshot wound treated. Officer Steven

Story went to the emergency room and took photographs of Chandler and his wound.

Over the next two days, Buchanan cooperated with police and kept in contact with Clark.

According to Buchanan, she talked with Clark on the phone several times and encouraged him to

turn himself in. At some point, Clark told Buchanan that he was staying at the Casey Jones Motel.

Clark testified that Buchanan spent several hours with him at the motel the day after the shooting,

and that he fell asleep while she was still in the room. Buchanan testified that she only went to the

motel parking lot to see if Clark's car was there, and that she did not see or visit Clark while she was

there. Regardless, on the morning of April 9, 2006, Buchanan called the police and told Officer

Eddie McClain that Clark was at the motel, for which she collected a $200 police reward.

After receiving the information on Clark's whereabouts from Buchanan, McClain and several

other officers met at the motel on the morning of April 9, 2006. When the first officers arrived,

Clark was in the parking lot of the motel, and they followed him to his room. Once in the room, the

officers cuffed Clark, searched him, and searched the room. McClain and Officer Alan Randolph

testified at the suppression hearing that Clark gave the officers verbal consent to search his rental

car, parked in the motel parking lot, which fit Buchanan's description of the car Clark was driving the night of the shooting. Clark testified that he never gave consent to search the vehicle and that none of the officers even asked for his consent or mentioned a search of the vehicle.

Next, Randolph went to the parking lot, unlocked the rental car with Clark's keys, and searched the vehicle. He discovered a handgun in the glove compartment, loaded with five live rounds of ammunition. Randolph then contacted the rental company and waited until one of its employees came and picked up the vehicle.

**B. Procedural background**

A federal grand jury indicted Clark for violating 18 U.S.C. § 922(g) on January 23, 2007. On June 29, 2007, Clark filed a motion to suppress the handgun found in the glove compartment of his rental car. On November 26, 2007, the district court held a hearing on the motion to suppress where Clark and five police officers testified. The court ruled from the bench finding that Clark consented to the search and therefore denied the motion to suppress.

The case proceeded to trial on December 18, 2007. Clark stipulated that he was a convicted felon. His defense rested on two propositions: (1) that despite his prior felony convictions, he was justified in temporarily possessing the handgun on April 7, 2006, to defend himself from Chandler, and (2) that either the police or Buchanan planted the gun in his glove compartment. During Buchanan's testimony, the Government attempted to introduce a photograph of Chandler sitting in the hospital bed and two photographs of Chandler's bullet wound. Clark objected to the introduction of the photographs as irrelevant and unduly prejudicial. The Court overruled his objection, allowing the Government to introduce the photograph of Chandler sitting in the hospital bed and one

photograph of his wound, but excluding the second photograph of the wound as duplicative. During

Clark's testimony, the defense attempted to introduce evidence that Chandler was also a convicted

felon to support Clark's assertion that Chandler was the aggressor the night of the shooting. The

court excluded the evidence of Chandler's convictions as irrelevant and inadmissible character

evidence. Chandler did not testify, as he died from causes unrelated to the shooting prior to trial.

The jury returned a verdict of guilty on December 19, 2007. On March 25, 2008, the district

court sentenced Clark to 300 months in prison and five years of supervised release. Clark filed a

notice of appeal with the district court on March 31, 2008.

## II. ANALYSIS

### A. Motion to suppress firearm

*1. Standard of review*

In reviewing a district court's ruling on a motion to suppress, this Court reviews findings of

fact for clear error and conclusions of law de novo. *United States v. Blair*, 524 F.3d 740, 747 (6th

Cir. 2008) (citing *United States v. Foster*, 376 F.3d 577, 583 (6th Cir. 2004)). In doing so, "the

evidence must be reviewed 'in the light most likely to support the district court's decision.'" *Foster*,

376 F.3d at 583 (quoting *United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999)).

"Consent is a question of fact, to be determined from the totality of the circumstances, and reviewed

for clear error." *United States v. Hurst*, 228 F.3d 751, 757 (6th Cir. 2000). A finding of fact is

clearly erroneous only when this Court "is left with the definite and firm conviction that a mistake

has been committed." *Id.* at 756. Finally, "[f]indings of fact anchored in credibility assessments are

generally not subject to reversal upon appellant review. . . . 'Where there are two permissible views

of the evidence, the factfinder's choice between them *cannot be clearly erroneous*.'" *United States v. Taylor*, 956 F.2d 572, 576 (6th Cir. 1992) (en banc) (quoting *United States v. Rose*, 889 F.2d 1490, 1494 (6th Cir. 1989)).

### 2. Consent

Clark's first argument on appeal is that the district court erred in finding that he consented to the search of the vehicle because his consent was not given voluntarily and intelligently. A warrantless search "conducted pursuant to a valid consent is constitutionally permissible," but the prosecution "has the burden of proving that the consent was, in fact, freely and voluntarily given." *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973) (internal quotation marks omitted). We have recognized a number of factors that militate against a finding that consent was voluntary, including: "[y]outh, minimal schooling, or low intelligence; repeated and prolonged questioning; physical punishment such as the deprivation of food or sleep; and promises made . . . by the police officers." *United States v. Crowder*, 62 F.3d 782, 788 (6th Cir. 1995).

Clark's argument on appeal—that his consent was involuntary—fails because it directly contradicts his suppression hearing testimony. Clark was the only defense witness to testify at the suppression hearing, and he testified that he never gave consent because the police never asked to search the vehicle, or even mentioned a search of the vehicle. He also testified that the police did not threaten him or force him to do anything, besides placing him under arrest. Both McClain and Randolph testified that they asked Clark for consent to search the vehicle, that Clark gave them consent, and that they did not threaten or coerce Clark in any way. The district court did not clearly err by finding that Clark's consent was voluntary because this conclusion was supported by the

police officers' testimony and there was no evidence presented that his consent was involuntary. *See United States v. Elkins*, 300 F.3d 638, 648 (6th Cir. 2002) ("A defendant 'must show more than a subjective belief of coercion, but also some objectively improper action on the part of the police' in order to invalidate consent." (quoting *Crowder*, 62 F.3d at 787)). The version of events Clark asks this Court to believe—that he gave consent, but only under police coercion—is one to which none of the witnesses at the suppression hearing testified. Moreover, none of the usual factors that indicate involuntariness are present in this case. *See Crowder*, 62 F.3d at 788. Most significantly, despite their contrasting versions of events, both Clark and the police officers testified that Clark was neither threatened nor coerced.

Even if Clark made the argument on appeal that is supported by his testimony—that he did not consent because the police officers never asked to search his car—his argument would fail. The district court was presented with two conflicting versions of events: (1) the police officers asked to search Clark's car and Clark consented, or (2) the police searched Clark's car without ever asking him for consent. "'[W]hen there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous.'" *United States v. Lawrence*, 308 F.3d 623, 627 (6th Cir. 2002) (quoting *United States v. Ivy*, 165 F.3d 397, 401-02 (6th Cir. 1998)). Further, the finding of consent was based primarily on the district court's determination that the officers' testimony was more credible than Clark's testimony and "'findings of fact anchored in credibility assessment are generally not subject to reversal upon appellate review.'" *Id.* (quoting *Ivy*, 308 F.3d at 401).

### 3. Inevitable discovery

In an alternative holding, which Clark also challenges, the district court determined that the

handgun in Clark's rental car would have been admissible under the inevitable discovery doctrine even if he had not consented to the search. We do not reach this issue because the district court did not err in concluding that Clark consented to the search of the vehicle. *See Crowder*, 62 F.3d at 788.

**B. Admission of photographs of Chandler in hospital**

   *1. Standard of review*

Clark next argues that the district court erred in admitting the photographs taken of Chandler in the hospital because they were irrelevant and unduly prejudicial. This Court reviews evidentiary rulings on relevance and prejudice for abuse of discretion. *United States v. Franco*, 484 F.3d 347, 350-51 (6th Cir. 2007) (citing *United States v. Chambers*, 441 F.3d 438, 455 (6th Cir. 2006)). In doing so, "we must look at the evidence in the light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." *United States v. Newsom*, 452 F.3d 593, 603 (6th Cir. 2006) (internal quotation marks omitted). "'Broad discretion is given to district courts in determinations of admissibility based on considerations of relevance and prejudice, and those decisions will not be lightly overruled.'" *Franco*, 484 F.3d at 351 (quoting *Chambers*, 441 F.3d at 455). "An abuse of discretion will be found if the district court relies on clearly erroneous findings of fact, improperly applies the law or uses an erroneous legal standard." *Chambers*, 441 F.3d at 455.

   *2. Relevance*

Clark contends that the photographs were not relevant, and therefore were inadmissible, because they did not tend to prove any element of the crime with which he was charged, namely, that Clark knowingly possessed a firearm. Relevant evidence generally is admissible, while irrelevant evidence is inadmissible. Fed. R. Evid. 402. Evidence is relevant if it "ha[s] any tendency to make

the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "The standard for relevancy is 'extremely liberal' under the Federal Rules of Evidence." *Dortch v. Fowler*, 588 F.3d 396, 400 (6th Cir. 2009) (quoting *United States v. Whittington*, 455 F.3d 736, 738 (6th Cir. 2006)).

The photographs were relevant because they tended to show that Chandler was shot the night of April 7, 2006, which corroborated Buchanan's testimony that Clark possessed the gun and shot Chandler that night. "To convict a defendant under 18 U.S.C. § 922(g)(1), the government must prove beyond a reasonable doubt that: (1) the defendant had a previous felony conviction; (2) the defendant knowingly possessed a firearm or ammunition; and (3) the firearm or ammunition had traveled in or affected interstate commerce." *United States v. Sanders*, 404 F.3d 980, 984-85 (6th Cir. 2005). Photographs showing Chandler in the hospital and Chandler's gunshot wound tend to make it more probable that Clark knowingly possessed a firearm that night because Chandler could not have been shot unless someone present possessed a firearm and because the photographs corroborated Buchanan's testimony that Clark shot Chandler. *Cf. United States v. Mackey*, 249 F. App'x 420, 426 (6th Cir. 2007) (holding that a photograph of gun found on defendant's cell phone that resembled the gun he was charged with illegally possessing under § 922(g) was relevant because it "ha[d] *some* tendency to demonstrate [the defendant's] power and intent to exercise dominion and control over that item"); *United States v. Wright*, 102 F. App'x 972, 979 (6th Cir. 2004) (holding that admissions made by defendant in a related state court proceeding were relevant in his § 922(g) trial because they "provided support to [an eyewitness's] testimony and thus potentially added to the credibility of her statements in the eyes of the jurors"). The photographs also corroborated Officer

Steven Story's later testimony that he visited Chandler at the hospital that night to photograph and interview him. Given the broad discretion afforded to district courts in determining relevancy and the nexus between photographs of Chandler's gunshot wound and Clark's possession of the gun, we conclude that the district court did not abuse its discretion in finding that the photographs of Chandler were relevant.

### 3. *Probative value versus danger of unfair prejudice*

Clark next avers that the district court erred in admitting the photographs because their probative value was outweighed by their tendency to unfairly prejudice the jury against him. Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. "'Unfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest a decision on an improper basis.'" *United States v. Johnson*, 581 F.3d 320, 327 (6th Cir. 2009) (quoting *Paschal v. Flagstar Bank*, 295 F.3d 565, 579 (6th Cir. 2002)). Because the Government was the proponent of the evidence, we must review it in the light most favorable to the Government, "maximizing its probative value and minimizing its prejudicial effect." *Newsom*, 452 F.3d at 603 (internal quotation marks omitted).

Clark has provided scant argument or legal support for his assertion that the photographs were unduly prejudicial. Construing his allegations broadly, there are two possible grounds for arguing that the prejudicial effect of the photographs outweighed their probative value—their goriness and their tendency to implicate Clark in a crime for which he was not on trial. The goriness of the photographs might evoke in the jurors a desire to hold somebody responsible for Chandler's

injuries, even though Clark was not being tried for shooting Chandler. However, the district court addressed this issue, noting that none of the photographs were especially gory and excluding as duplicative the bloodier of the two photographs showing Chandler's wound. Given the district court's broad discretion on these matters, we conclude that these photographs were not unduly prejudicial on these grounds. *See United States v. McClain*, 56 F.3d 65, 1995 WL 319088, at *2-*3 (6th Cir. 1995) (unpublished); *United States v. Brady*, 595 F.2d 359, 361-62 (6th Cir. 1979).

Second, evidence that Clark shot Chandler—a crime separate from the charge of being a felon in possession of a firearm—might bias jurors against Clark impermissibly by leading them to believe that Clark had a propensity to commit crimes. This argument fails because the Government's case against Clark for gun possession was inextricably linked to his shooting of Chandler. *See United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000); *see also United States v. Till*, 434 F.3d 880, 883-84 (6th Cir. 2006). This is not a case where the challenged evidence has the tendency to encourage the jurors to convict the defendant on a propensity theory based on an earlier, unrelated crime. *See, e.g.*, *United States v. Kellogg*, 306 F. App'x 916, 925-27 (6th Cir. 2009). Rather, while the photographs were "certainly inconsistent with the contention" that Clark did not possess a firearm, "any 'prejudice' in this sense is not 'unfair' as contemplated by Rule 403." *Wright*, 102 F. App'x at 981; *see United States v. Mendez-Ortiz*, 810 F.2d 76, 79 (6th Cir. 1986) ("'Unfair prejudice,' as used in Rule 403, does not mean the damage to the defendant's case that results from the legitimate probative force of the evidence; rather, it refers to evidence which tends to suggest decision on an improper basis.") The fact that Clark later testified that he indeed possessed the gun and shot Chandler decreases any risk of unfair prejudice even further.

Finally, Clark's assertion that the photographs had no probative value is unpersuasive. At trial, the Government twice offered not to introduce the photographs if Clark would stipulate that Chandler had been shot that evening, but Clark did not accept the offer. Further, it bears noting that because Chandler passed away prior to the trial, Buchanan was the only witness who could testify to seeing Clark shoot Chandler. Therefore, evidence that corroborated her story, in the form of photographs of Chandler, was highly probative. The importance of corroborating Buchanan's testimony only grew as the defense attempted to impeach her and as Clark offered a contrasting version of events.

## C. Exclusion of Chandler's convictions

During his direct examination at trial, Clark attempted to introduce evidence that Chandler had been convicted of violent felonies prior to the shooting. The court excluded the evidence under Federal Rule of Evidence 404(b). On appeal, Clark argues that the district court erred in excluding the evidence because (1) character evidence about a victim's propensity towards violence is an exception to the propensity rule, and (2) showing that Clark was afraid of Chandler because of his violent character was an essential element of Clark's justification defense.

### 1. Standard of review

This Court reviews rulings admitting or excluding evidence of other crimes, wrongs, or acts under Federal Rule of Evidence 404(b) for abuse of discretion. *United States v. Haywood*, 280 F.3d 715, 720 (6th Cir. 2002); *see also United States v. Love*, 254 F. App'x 511, 513-14 (6th Cir. 2007).

### 2. Admissibility under Rule 404(b)

The use of character evidence "for the purpose of proving action in conformity therewith on

a particular occasion" is generally prohibited. Fed. R. Evid. 404(a). However, the character of an alleged victim is a specific exception to this prohibition on propensity evidence. Fed. R. Evid. 404(a)(2). Still, even when character evidence is admissible to show propensity, as with the alleged victim exception, the type of evidence that can be used to show propensity is limited. *See* Fed. R. Evid. 404(b), 405. Specifically, "[e]vidence of other crimes, wrongs, or acts" is not admissible "to show action in conformity therewith," even though it may be admissible for other purposes. Fed. R. Evid. 404(b).

We conclude that the district court correctly ruled that the evidence of Chandler's past convictions was not admissible to show he had a propensity for violence under Rule 404(b). Disputes over the admissibility of evidence under Rule 404(b) usually concern evidence of a criminal defendant's past acts introduced by the prosecution. By attempting to introduce evidence of Chandler's past crimes, Clark has presented the Court with a case of "reverse 404(b)" evidence. *See United States v. Lucas*, 357 F.3d 599, 605 (6th Cir. 2004). Reverse 404(b) evidence is "evidence of a prior act by another [that] is offered as exculpatory evidence by the defendant, instead of being used by a prosecutor against a defendant." *Lucas*, 357 F.3d at 605 (citing *United States v. Hill*, 322 F.3d 301, 308 (4th Cir. 2003)). Despite the different implications raised by the admission or exclusion of reverse 404(b) evidence, we have applied our standard Rule 404(b) analysis in addressing the admissibility of such evidence. *See id*. at 605-06; *see also United States v. Daulton*, 266 F. App'x 381, 386-87 (6th Cir. 2008); *United States v. Robinson*, 272 F. App'x 421, 429-31 (6th Cir. 2007).

Clark was prohibited from presenting evidence of Chandler's past convictions to show that

Chandler was the aggressor on the night of the shooting because this evidence went to Chandler's character, specifically, his alleged propensity toward violence. *See Robinson*, 272 F. App'x at 430. Even assuming that Chandler qualifies as an alleged victim under Rule 404(a)(2), which would permit Clark to present character evidence about Chandler for propensity purposes, Clark still was not permitted to present evidence of Chandler's past crimes for propensity purposes. Rule 404(b)'s prohibition on using evidence of past crimes to show propensity is clear. At best, Clark was limited to offering reputation and opinion evidence to show that Chandler had a propensity toward violence. *See* Fed. R. Evid. 405.

Even though evidence of Chandler's convictions was not admissible for propensity purposes, it is possible that it could have been admitted for a permissible, non-propensity purpose under Rule 404(b). *See United States v. Blankenship*, 775 F.2d 735, 739 (6th Cir. 1985). Clark argues on appeal that evidence of Chandler's convictions was admissible to prove that Clark had a well-grounded fear of Chandler, justifying his possession of the firearm, at least temporarily. Indeed, if Clark knew of Chandler's convictions at the time of the shooting, he may have been able to introduce evidence of the convictions to show that his knowledge of Chandler's violent behavior made him fear Chandler. *See United States v. Saenz*, 179 F.3d 686, 688-89 (9th Cir. 1999); *Virgin Islands v. Carino*, 631 F.2d 226, 229-30 (3d Cir. 1980). However, at trial, Clark did not seek to introduce Chandler's convictions as evidence of Clark's state of mind. Clark's attorney specifically stated that the purpose of introducing Chandler's convictions was to support "[Clark's] testimony that [Chandler] was the first aggressor" and "to show that [Chandler] was acting violently at the time." (Appeal Transcript 206-07.) Introducing evidence of Chandler's past crimes to show that he was the aggressor the night

of the shooting is using the evidence to show propensity—not Clark's state of mind.

Moreover, even if Clark had offered Chandler's convictions for the purpose of showing his state of mind at the time of the shooting, the evidence still would have been subjected to a Rule 403 balancing test. *See United States v. Bell*, 516 F.3d 432, 440-41 (6th Cir. 2008). Given the fact that, of all types of character evidence, evidence of specific instances of conduct "possesses the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time," Fed. R. Evid. 405 advisory committee's note, it would not have been an abuse of discretion for the district court to exclude the evidence of Chandler's convictions under Rule 403 instead.

*3. Admissibility under Rule 405(b)*

Clark next argues that the evidence of Chandler's past convictions was admissible because it was an essential element of his justification defense. "In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may . . . be made of specific instances of that person's conduct." Fed. R. Evid. 405(b). Thus, if Clark can show that Chandler's character was an "essential element" of his justification defense, then he might be able to show that the district court erred in excluding the evidence of Chandler's convictions. *See United States v. Franco*, 484 F.3d 347, 352 (6th Cir. 2007).

While a justification defense is available against gun-possession charges "in rare situations," *United States v. Singleton*, 902 F.2d 471, 472 (6th Cir. 1990), the character of a shooting victim is not an essential element of such a defense. The elements required to make out such a justification defense are: (1) that the defendant "was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury";

- 15 -

(2) that the defendant "had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct"; (3) that the defendant "had no reasonable, legal alternative to violating the law"; and (4) "that a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm." *Id.* (internal quotation marks and brackets omitted). Subsequent decisions of this Court have also required that the defendant show that he or she "did not maintain the illegal conduct any longer than absolutely necessary." *See United States v. Ridner*, 512 F.3d 846, 851 (6th Cir. 2008).

Clark argues that he needed to introduce the evidence of Chandler's past crimes to show that his fear under the first prong was well-grounded. However, in determining whether evidence of Chandler's character was an "essential element" of this defense, "[t]he relevant question should be: would proof, or failure of proof, of the character trait by itself actually satisfy an element of the charge, claim, or defense?" *United States v. Keiser*, 57 F.3d 847, 856 (9th Cir. 1995). In *Keiser*, the Ninth Circuit concluded that a shooting victim's character was not an essential element of the defendant's justification defense because

> [e]ven had [the defendant] proven that [the victim] is a violent person, the jury would still have been free to decide that [the victim] was not using or about to use unlawful force, or that the force [the victim] was using was not likely to cause death or great bodily harm, or that [the defendant] did not reasonably believe force was necessary, or that [the defendant] used more force than appeared reasonably necessary. On the other hand, a successful defense in no way depended on [the defendant's] being able to show that [the victim] has a propensity toward violence.

*Id.* at 857; *see also United States v. Gulley*, 526 F.3d 809, 818-19 (5th Cir. 2008) (following *Keiser*'s holding and noting similar decisions from the Seventh and Eighth Circuits). The same reasoning applies here. Even if Clark could prove that Chandler had a propensity toward violence, the jury still

could have rejected his justification defense for any number of legitimate reasons, the two most obvious being that Buchanan's testimony directly contradicted his justification theory and that the gun in question was found in Clark's rental car two days later. Moreover, Clark's justification defense could have been effective without showing that Chandler had a propensity toward violence. Therefore, Chandler's character was not an essential element of Clark's justification defense, and the district court did not err by excluding evidence of Chandler's convictions. *See United States v. Seymour*, 468 F.3d 378, 387 (6th Cir. 2006) (holding that evidence of the victim's character was not admissible under Rule 405(b) because it was not an essential element of the charge against the defendant).

### 4. Due process

Finally, Clark argues that the exclusion of Chandler's convictions violated his due process rights by preventing him from presenting a full defense. This argument fails because the exclusion of the evidence in question did not prevent Clark from exploring his justification theory and presenting it to the jury through his own testimony. *See Lucas*, 357 F.3d at 606. Further, the evidence was excluded properly, and "a complete defense does not imply a right to offer evidence that is otherwise inadmissible under the standard rules of evidence." *Id.*

### III.  CONCLUSION

For the reasons set forth above, we **AFFIRM** Clark's conviction under 18 U.S.C. § 922(g).